**In re FABRIC BUYS OF JERICHO, INC., f/k/a Jules Moskowitz Co., Inc., Debtor.**

**Sanders GROPPER, Trustee of Fabric Buys of Jericho, Inc., f/k/a Jules Moskowitz Co., Inc., Plaintiff,**

**v.**

**SAMUEL KUNSTLER TEXTILES, INC., Defendant.**

**Bankruptcy No. 81 B 10790. Adv. No. 81–5367–A.**

United States Bankruptcy Court, S. D. New York.

Sept. 23, 1982.

---

# 1014

Bertram Goldstein, New York City, for plaintiff-trustee.

Morris C. Kimmel, New York City, for defendant.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

This adversary proceeding was commenced on June 25, 1981, to recover $13,-964.49 in preferential transfers pursuant to Bankruptcy Code sections 547 and 550. After the defendant served his answer, the plaintiff, trustee of the debtor, made this motion for summary judgment. Both parties have submitted affidavits and memoranda of law on the motion. The motion for summary judgment in favor of the plaintiff is granted.

*Background*

The debtor filed its voluntary petition on April 10, 1981. This proceeding is based upon the debtor's purchases of assorted fabrics from Samuel Kunstler Textiles, Inc., ("Kunstler"), the defendant in late 1980. The payments involved were made to satisfy five invoices which were dated October 28, 1980 (invoices 26670, 26671 and 26672), October 30, 1980 (invoice 26687), and November 11, 1980 (invoice 26725). By check dated January 26, 1981, in the amount of $11,885.49, debtor paid invoices numbered 26670, 26671, 26672 and 26687, reduced by credit allowances totalling $376.75. That January 26th check was paid by debtor's bank on February 2, 1981. The debtor paid invoice numbered 26725 by check dated February 3, 1981 in the amount of $2,079.00. That February 3rd check was paid by the debtor's bank on February 9, 1981. Another shipment of fabrics was made and recorded by invoice numbered 26909, dated January 13, 1981. The amount reflected on the invoice was $2,800.60. This amount has not been paid and defendant has filed a proof of claim.

In its answer, Kunstler admitted receiving $13,964.49 from the plaintiff, the sum of the January 26th and February 3rd checks. Kunstler also admitted that at the time of the transfers it was a creditor of the debtor and the transfers were to or for the benefit of the defendant, as a creditor of the debtor. Therefore, the first element of a preference has been satisfied. See 11 U.S.C. § 547(b)(1).

The plaintiff has shown to the satisfaction of the Court that the instant transfers enabled the defendant to receive more than it would have received if the case were a case under Chapter 7. *See* 11 U.S.C.

§ 547(b)(5). This is evidenced by the trustee's representation that there is a prospective dividend of 25% to 35% to general unsecured creditors of the debtor.

*Insolvency*

■ In its memorandum of law in opposition to the instant motion, defendant contends that the plaintiff has not proven the debtor's insolvency at the time of the transfers in question. The defendant states that prior to each sale it inquired as to the creditworthiness of the debtor and was assured by the debtor's factors that the debtor had sufficient credit to cover the transactions. The insolvency or solvency of the debtor at the time of the sales has no relevance in this proceeding. It is the insolvency at the date of the transfer which is crucial in determining a preference. *See* 11 U.S.C. § 547(b)(3). Under section 547(f), the insolvency of the debtor is presumed on and during the 90 days immediately preceding the date of the filing of the petition. Since the transfers occurred on February 2, 1981, and February 9, 1981, there is no question that the transfers occurred within the 90 days preceding the filing of the petition.

■ The defendant further contends that it had no notice of the debtor's "financial straits". The effect of the presumption obliterates the necessity of knowledge on the part of the defendant of the debtor's insolvency to prove a preference. "Section 547 creates a statutory presumption of insolvency of the transfer took place within the 90 days preceding the filing of the petition. This means that the transferee must come forward with some evidence to rebut the presumption, while the burden of ultimate persuasion remains on the party seeking to void the transfer." *In re Lucasa International, Ltd.,* 13 B.R. 596,600 (Bkrtcy.S.D.N. Y., 1981). The defendant has not produced any evidence to rebut the presumption. Furthermore, the plaintiff has submitted balance sheets prepared by the trustee's accountants which indicate insolvency of the debtor on December 31, 1980, and April 9, 1981. In addition, the accountant in his affidavit states that the debtor was insolvent *at all* times between December 31, 1980 and April 9, 1981. Since the transfers occurred in February, 1981, this Court concludes that the debtor was insolvent at the time of the transfers.

*Payments Made In The Ordinary Course of Business*

Defendant contends that the transfers may not be avoided by the trustee pursuant to section 547(c)(2)(A)–(D). This section provides that payments made in the ordinary course of business, pursuant to ordinary business terms of a debt incurred in the ordinary course of business and made not later than 45 days after the debt was incurred may not be avoided by a trustee.

One commentator has stated:

Forty-five days was selected as a normal trade credit cycle. For example, a normal trade credit transaction might be as follows: Supplier ships during month 1 and sends his bill to the debtor at the end of the month or the very early part of the following month. Normally, that bill would become due, or will be payable in the debtor's course of business by the 10th of month 2. If it is paid by the 15th then there will be no question that the entire transaction incurring of the credit and the payment took place within 45 days.

Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Amer.Bankr.J. 173, 186 (Spring 1979) (hereinafter "Levin, *Avoiding* Powers").

■ Defendant has stated that it demanded payment, "in each and every case" when the goods were sold. The determination of when a debt actually "incurred" is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. Probably the better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt. Thus, if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is "incurred." 4 *Collier on Bankruptcy,* ¶ 547.38 (15th ed. 1981).

Thus, the facts clearly show that the payments were not made within the 45 day

limit. With respect to the invoices dated October 28, 1980, the invoice dated October 30, 1980 and the invoice dated November 11, 1980, the 45 day period terminated on December 11, 1980, December 13, 1980 and December 25, 1980, respectively. Therefore, the payments on February 2, 1981 and February 9, 1981, were made beyond the 45 day period prescribed by Congress and on account of an antecedent debt.

*Contemporaneous Exchange*

■ The defendant also contends that the transfers for which payment was made were intended as contemporaneous exchanges and in the ordinary course of business were substantially so. It must be noted that, as the invoices indicate, all the purchases were made on credit. All the invoices reflect that the terms of the sales were "net 60."

Regarding the contemporaneous exchange exception, Congress has stated:

The first exception [§ 547(c)(1) ] is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. *Normally, a check is a credit transaction.* However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to transfer that is "in fact substantially contemporaneous."

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 373 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329. (emphasis added).

As one commentator has said:

This exception seeks to codify the existing judicially created exception that an exchange for new value that is intended to be contemporaneous exchange should not be subject to attack by the trustee.... The rule of Code § 547(c)(1) would apply [equally] to the sale of property or goods when an *outright cash sale* is intended, but there is some delay between payment of the purchase price and transfer of the property.

Kaye, *Preferences Under the New Bankruptcy Code,* 54 Amer.Bankr.J. 197, 198–199 (Summer 1980) (emphasis added) (Hereinafter "Kaye, *Preferences* ").

The legislative history of § 547(c)(1), and the interpretation of it, implies that a credit transaction cannot be considered contemporaneous. The fact that Congress saw it appropriate to specifically include a *check* as a contemporaneous exchange, when normally it would be a credit transaction seems to strengthen the inference that a credit transaction cannot be a contemporaneous exchange.*

Therefore since all the purchases were on credit terms and the payments were made over 90 days from the dates the dates the debts were incurred. The shipments for which the transfers were made can not be considered contemporaneous exchanges.

*Set Off*

■ Defendant also contends that the shipment made on January 13, 1981, was intended as a contemporaneous exchange and claims that the $2,800.60 should be set off against the amount of the preference. First, as the invoices indicates, this shipment of goods was made on credit at terms net 30. As stated above, credit transactions are not considered contemporaneous exchanges.

With respect to the set off claim, section 547(c)(4) states: "The trustee may not avoid under this section a transfer—(4) to or for the benefit of a creditor, to the extent that, *after such transfer,* such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable

---

* In a recent opinion, a Florida court stated, in dicta, that "The Legislative history indicates that the first exception set forth in § 547(c)(1)(A), (B) was designed to protect *so-called* cash *transactions* where a transfer involved a payment by check which is intended to be a transfer for a contemporaneous transfer for value and *not a credit transaction.*" *In re Christian,* 8 B.R. 816, 819 (Bkrtcy.M.D.Fla. 1981). (emphasis added)

transfer to or for the benefit of such creditor." (emphasis added)

The fourth exception is a codification of Bankruptcy Act section 60c. This exception, commonly known as the "new value" or "net-result rule", insulates from preference attack a transfer to a creditor to the extent that a creditor *thereafter* replenishes the estate. The new value given must be unsecured and may only be *netted against a previous preferential transfer, not a subsequent preferential transfer.* Levin, *Avoiding Powers* at 187 (emphasis added); *see* Kaye, *Preferences* at 206; Young, *Preferences Under the Bankruptcy Reform Act of 1978,* 54 Amer.Bankr.J. 221, 229 (Summer 1980). Since the January 13, 1981, shipment of goods was made before the transfers in question, no set off is allowed under section 547(c)(4).

*Conclusion*

In conclusion, there are no genuine issues of material facts present in this case and based upon the law plaintiff is entitled to recover from the defendant the preferential transfers totalling $13,964.49.

It is so ordered.

