In re PHILADELPHIA LIGHT
SUPPLY CO., Debtor.

PHILADELPHIA LIGHT SUPPLY
CO., Plaintiff,

v.

B.R.K. ELECTRONICS, Defendant.

Bankruptcy No. 82–01526G.
Adv. No. 82–3242G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 14, 1983.

Nathan Lavine, Adelman Lavine Krasny Gold & Levin, Anthony E. Creato, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Phila-

delphia, Pa., for plaintiff/debtor, Philadelphia Light Supply Co.

Benson Zion, Benson Zion & Associates, Haverford, Pa., for defendant, B.R.K. Electronics.

Drinker, Biddle & Reath, Philadelphia, Pa., and Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a wire transfer of $33,338.72 by the debtor to the defendant is avoidable by the debtor pursuant to section 547(b) of the Bankruptcy Code ("the Code"). Since the elements necessary to establish a defense to the debtor's avoidance powers under section 547(c)(4) of the Code are present herein, we conclude that the transfer at issue cannot be avoided by the debtor pursuant to section 547(b) of the Code. The facts of the instant case are as follows:[1] In early 1982, Philadelphia Light Supply Company ("the debtor"), a wholesale distributor of small electrical appliances, learned that one of its customers was about to open a new retail store. In order to have merchandise available for the new store opening, the debtor, on January 27, 1982, ordered $70,000.00 worth of goods from B.R.K. Electronics ("B.R.K."), a manufacturer of small appliances with whom the debtor had done business for many years. The debtor, however, did not receive confirmation of said order within the usual period of time. Consequently, the debtor engaged in a series of conversations with the debtor's credit manager regarding the processing of the $70,000.00 order. B.R.K., however, had put a hold on the $70,000.00 purchase order because the debtor had exceeded its credit limit. After some discussion, B.R.K. agreed to process the $70,000.00 order if the debtor would reduce its open revolving account with B.R.K. by the sum of at least $36,000.00. Consequently, on

February 19, 1982, the debtor drafted a check to B.R.K.'s order in the amount of $33,338.72, which sum represented the debtor's calculation of the amount due on a November, 1981, invoice. However, the amount of said check was less than the $36,000.00 demanded by B.R.K. because the debtor also forwarded to B.R.K. a "debit memorandum"[2] which, according to the debtor, represented the debtor's claim against B.R.K. for an advertising allowance allegedly due under a separate agreement between the debtor and B.R.K. ("the advertising allowance contract"). The $70,000.00 order was eventually received by the debtor on February 24, 1982. However, the debtor, before having received the merchandise, had placed a stop payment on the aforesaid check on the same day because it was dissatisfied that it had not yet received the goods. Upon receipt of the goods, the debtor directed its bank to remove the stop payment but the bank mistakenly failed to comply with the debtor's request; and, on March 9, 1982, the debtor's bank returned the debtor's check to B.R.K. with the notation "payment stopped." The bank subsequently corrected its error and on March 11, 1982, it transferred the $33,338.72 (the amount of the February 19, 1982, check from the debtor to B.R.K.) to B.R.K. by wire transfer. On April 5, 1982, the debtor filed a petition for reorganization under chapter 11 of the Code and, on December 6, 1982, the debtor filed the instant complaint to avoid the transfer of the $33,338.72 in accordance with section 547(b) of the Code. In addition to the wire transfer of $33,-338.72, the debtor also contends that it transferred $2,000.00 to B.R.K. by means of an allegedly authorized allowance of a $2,000.00 advertising credit that the debtor gave to its retail customer pursuant to the advertising allowance contract. Said credit was allegedly given by the debtor to its customer as the debtor's contribution to the cost of advertising B.R.K.'s products. The debtor's concept of the above transaction as a cash preference rests on the premise that

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** *See* Exh. P–4.

the debtor received less from its customer by giving the customer advertising credits on B.R.K.'s behalf. The debtor therefore maintains that the payment to its retail customer was a transfer of property to or for the benefit of B.R.K. avoidable under section 547(b) of the Code. This opinion will address the two alleged transfers separately, dealing first with the transfer of the $33,338.72.

■ As set forth in section 547(b) of the Code, five (5) elements must be satisfied in order for the debtor to avoid the subject transfer.[3]

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1979).[4]

B.R.K. contends initially that the debtor did not carry its burden of proving that it was insolvent at the time of the purported transfers. Under section 547(b)(3) of the Code, the debtor can avoid a transfer as being preferential only if "made while the debtor was insolvent." 11 U.S.C. § 547(b)(3) (1979). However, section 547(f) of the Code provides that, for purposes of avoiding a preferential transfer, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f) (1979). Said presumption is governed by Fed.R.Evid. 301, which provides:

[A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

In the case *sub judice,* B.R.K. asserts that it has presented "substantial" evidence to rebut the presumption. This "substantial" evidence consists of the fact that: (1) the debtor's president, when asked by B.R.K. in February of 1982, for the debtor's financial statement, forwarded a financial statement to B.R.K. reflecting the debtor's financial condition as of May 31, 1981, (which showed a total net worth of $251,147.00) and (2) the debtor's president "sincerely believed" that the debtor was solvent at the time the transaction at issue occurred.[5] In any

---

**3.** Section 1107(a) of the Code grants the debtor in possession substantially all the rights and powers of a trustee appointed in a case under chapter 11 of the Code. 11 U.S.C. 1107(a) (1979).

**4.** The burden of proof to establish each of the elements in § 547(b) by a preponderance of the evidence rests with the debtor. *Denaburg v. Post Welding Supply Co., Inc. (In re Denaburg)* 7 B.R. 274, 275 (Bkrtcy.N.D.Ala.1980). *See also American Nat'l Bank & Trust Co. v. Bone,*

333 F.2d 984, 987 (8th Cir.1964); *Mizell v. Phillips,* 240 F.2d 738, 740 (5th Cir.1957).

**5.** Obviously, the effect of a statutory presumption of insolvency obviates the necessity of knowledge of a debtor's insolvency on the part of the defendant-creditor. *See Gropper v. Samuel Kunstler Textiles (In re Fabric Buys of Jericho, Inc.)* 22 B.R. 1013 (Bkrtcy.S.D.N.Y. 1982).

event, we are at a loss to explain how B.R.K., on one hand, can claim that it has rebutted the presumption of insolvency set forth in section 547(f) and, on the other, introduce and have admitted into evidence an exhibit which clearly establishes that the debtor's liabilities exceeded its assets as of February 28, 1982.[6]

The central inquiry, as we see it, in this case is not whether the debtor has proven the elements of a preferential transfer as outlined in section 547(b) but rather whether B.R.K. has established a defense to the debtor's avoidance powers pursuant to sections 547(c)(1) and (2) and 547(c)(4) of the Code. Section 547(c)(1) provides:

> (c) The trustee may not avoid under this section a transfer—
>> (1) to the extent that such transfer was
>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>> (B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(1) (1979).

B.R.K. contends that the transaction in question falls within the exception embodied within section 547(c)(1) because the parties agreed that the sale of the $70,000.00 worth of merchandise (plus the special advertising arrangement) was in exchange for the payment of $36,000.00 on an open account not yet due. At first blush, it would appear that the subject transaction meets the requirements of section 547(c)(1) in that the $33,338.72 transfer was intended by the debtor and B.R.K. to be a contemporaneous exchange for new value given to the debtor (the $70,000.00 worth of merchandise). However, the instant case is not unlike the situation addressed by the court in *McClendon v. Cal-Wood Door (In re Wadsworth Building Components, Inc.)*, 10 B.R. 662 (Bkrtcy.D. Idaho 1981). In that case, the defendant-creditor attempted to establish a defense under section 547(c)(1) by asserting that it gave "new value" in the

form of a new shipment of goods only after a dishonored check of the debtor for a previous shipment of goods was made good. In rejecting the defendant-creditor's argument, the court held:

> (1) The true consideration for defendant's shipment of the December order which it had refused to ship until [sic] paid for the October orders was debtor's agreement to pay for such orders in the future in the established course of business. It was not debtor's promise to make the dishonored check good. That check was in payment of an existing legal obligation, and as such could not be consideration for the later shipments. Payment of the bad check was a condition precedent to shipment, but not consideration for the new shipment. Thus defendant gave no new value for the promise to make the dishonored check good.

> \*     \*     \*     \*     \*     \*

> (2) The transaction was not intended to be, and was not in fact, contemporaneous. The check was issued and dated November 28, 1979. It was dishonored on presentation but paid on February 14, 1980, some ninety-eight days later. This payment was not a new transaction, but the completion of one which originated on November 28, 1979.

> (3) In accepting debtor's promise to pay for the December order shipped in January of 1980, defendant acted no differently than other creditors who, relying on debtor's promise to pay for them in the future, shipped goods during the same period.

10 B.R. at 664.

In the instant case, it is undisputed that the $70,000.00 shipment was billed to the debtor by a separate invoice dated February 18, 1982, payable ninety (90) days thereafter. Consequently, despite B.R.K.'s contention that the transfer in question was intended by the parties to be a contemporaneous exchange for new value, the fact remains that the "new value" (the $70,-

---

**6.** *See* Exh. D–10.

000.00 shipment of merchandise) in this case was given to the debtor on credit. There was no single payment for a single sale. In fact, the debtor has never paid for the $70,000.00 shipment of merchandise. "The legislative history of § 547(c)(1), and the interpretation of it, implies that a credit transaction cannot be considered contemporaneous." *Gropper v. Samuel Kunstler Textiles (In Re Fabric Buys of Jericho, Inc.),* 22 B.R. 1013 (Bkrtcy.S.D.N.Y.1982). *See also Exchange Bank of Polk County v. Christian (In re Christian),* 8 B.R. 816 (Bkrtcy.M.D.Fla.1981). Consequently, we conclude that B.R.K. has not established a defense to the debtor's avoidance powers under section 547(c)(1).

■ We likewise conclude that B.R.K. has not established an exception to the debtor's avoidance powers as set forth under § 547(c)(2) of the Code, which provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms:

11 U.S.C. § 547(c)(2) (1979).

A review of the record of the instant case clearly shows that the transfer in question (the $33,338.72 wire transfer) took place well beyond the forty-five (45) day period following the date on which the debt (for which the $33,338.72 was transferred) was incurred. It is undisputed that the $33,338.72 was sent to B.R.K. in payment of an

invoice dated November, 1981; and, obviously, the debtor received the goods represented by that invoice prior thereto. Consequently, the $33,338.72 transfer was in no way "made not later than 45 days after such debt was incurred." 11 U.S.C. § 547(c)(2)(B) (1979).[7]

■ However, we conclude that the $33,338.72 transfer falls within the exception to the debtor's avoidance powers embodied in section 547(c)(4), which provides:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \* \* \*

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4) (1979).

In the instant case, the debtor mailed a check to B.R.K. for $33,338.72 on February 20, 1982. On March 9, 1982, the debtor's bank erroneously returned said check to B.R.K. with the notation "payment stopped" stamped thereon. Finally, on March 11, 1982, the debtor's bank wire transferred the $33,338.72 to B.R.K. However, the "new value" (the $70,000.00 worth of merchandise) was received by the debtor on February 24, 1982. The pivotal question, therefore, is whether the "new value" given by B.R.K. was advanced by B.R.K. *after* the transfer in question occurred, as literally required by the statute. This, in turn, depends on when a transfer is deemed to have occurred for the limited purposes of section 547(c)(4). The debtor contends that section 547(c)(4) is inapplicable in the instant case because the transfer took place on March

---

7. *See Naudain, Inc., formerly known as Brooks Shoe Manufacturing Company, Inc. v. Schaad Detective Agency (In re Naudain, Inc.),* 32 B.R. 875 (Bkrtcy.E.D.Pa.1983), and the authorities cited therein, wherein we held that: (1) the date of transfer, for purposes of § 547(c)(2), is the date the check is honored by the bank; and that (2) a debt is "incurred" for purposes of § 547(c)(2) when the debtor becomes liable for it—when a resource is consumed or a service performed—, not the date that the creditor chooses to bill the debtor.

11, 1982 (the date the $33,338.72 was wire transferred to B.R.K.), and, therefore, the "new value" (which was received by the debtor on February 24, 1982) was tendered by B.R.K. *prior to* the date of the transfer at issue.

In *Gold Coast Seed Co. v. Spokane Seed Co. (In re Gold Coast Seed Co.),* 30 B.R. 551, 10 B.C.D. 1049 (Bkrtcy. 9th Cir.), the Bankruptcy Appellate Panel for the Ninth Circuit held that the date of transfer, for purposes of section 547(c)(4), occurs on the date a check is received rather than on the date a check is honored by a bank. While we have previously held in *Ardmore Sales Co., Inc. v. Thico Plan, Inc. (In re Ardmore Sales Co., Inc.),* 22 B.R. 911, 913 (Bkrtcy.E.D. Pa.1982) that "[i]t is generally held that payment of a debt by check constitutes a transfer under the Code as of the date of payment rather than as of the date of delivery" (citations omitted), we conclude that such is not necessarily the case for section 547(c)(4) purposes. We do not think that the applicability of section 547(c)(4) should depend on whether the transfer is "deemed" to have preceded the extension of new value by the creditor. Rather, when it is beyond question that a creditor extends new credit without security to a debtor on the basis of the debtor's representation that it would pay the creditor on an antecedent debt, we think section 547(c)(4) should be applied to protect said creditor. Moreover, the facts of the present case compel such a conclusion. The record establishes beyond doubt that B.R.K. extended new credit (the $70,000.00 order) to the debtor on the express agreement that the debtor would reduce its open account by the sum of $36,000.00. It cannot be fairly disputed that the "bargain" was to reduce the debtor's account balance. We think that the facts of the instant case fall squarely within the purpose behind the section 547(c)(4) exception—"to encourage trade creditors to continue dealing with troubled businesses." *See Gold Coast, supra,* 30 B.R. 551, 10 B.C.D. at 1050. And, B.R.K. did, in fact, continue to deal with the debtor to the tune of $70,000.00 worth of credit for which it was never paid.

■ Finally, we must also reject the debtor's utterly confusing argument that it transferred $2,000.00 to B.R.K. when it reimbursed its customer for advertising B.R.K.'s product. At the outset, we must ponder whether the debtor is seeking a double recovery in regards to the advertising credit. In the instant complaint, the debtor, seeks to recover the sum of $2,000.00 from B.R.K.; yet, in its brief, the debtor indicates that it had already reimbursed itself for said credit by reducing payment for the November, 1981, invoice by $2,000.00. *See* debtor's brief at 8. In any event, we conclude that the debtor has simply failed to carry its burden of proving that the alleged $2,000.00 transfer satisfied all the elements outlined in section 547(b) of the Code. To take but one example, the "debit memorandum," which was sent along to B.R.K. with the February 19, 1982, check for $33,338.72, is dated March 9, 1982, which suggests that the debit memorandum was submitted to B.R.K. as an advance credit for advertising not yet due. Quite simply, the debtor has not proven to our satisfaction that the advertising credit represented a debt owed to the debtor by B.R.K. or, assuming, *arguendo,* that it was a debt, whether said debt was actually due and owing at the time the debit memorandum was submitted to B.R.K.