In re AIR VERMONT, INC. and North Atlantic Airlines, Inc., Debtors.

AIR VERMONT, INC. and North Atlantic Airlines, Inc., Plaintiffs,

v.

NORTHLAND CONSTRUCTION, INC., Defendant.

Bankruptcy Nos. 84–17, 84–19.
Adv. No. 84–0020.

United States Bankruptcy Court,
D. Vermont.

Feb. 21, 1985.

Joseph C. Palmisano, Barre, Vt., for debtor.

Harriet Ann King, King & King, Waitsfield, Vt., for Northland Construction.

## MEMORANDUM OPINION

CHARLES, J. MARRO, Bankruptcy Judge.

The matter is before the court on the complaint of the debtor, Air Vermont, Inc. ("Air Vermont"), to avoid a preferential transfer. The parties have submitted a stipulated set of facts.

## FACTS

In the fall of 1983, Air Vermont engaged the defendant, Northland Construction, Inc. ("Northland"), to construct certain airport counters, with work to be billed on a "cost plus" basis. On November 11, 1983 Northland invoiced Air Vermont $9,600 for the airport counter work, which had been completed on November 3, 1983. During the 90-day period immediately preceding the commencement of this case on January 31, 1984 Air Vermont paid Northland $7,800 against the November 11 invoice, as follows: $4,000 payment made December 6, 1983; $3,800 payment made December 27, 1983. The sum of $1,800 remains unpaid.

During the period between December 6 and December 27, 1983 Air Vermont engaged Northland under an oral, cost-plus construction contract to modify an airport hangar. Northland began work on December 14, and before December 27 incurred obligations of roughly $6,000 for materials and services furnished to the Air Vermont premises which was the work site. After December 27, Northland incurred $339 for materials and services furnished to the work site. Northland paid all obligations with respect to the airport hangar contract after December 27, 1983.

Northland stopped work on the hangar project on or about January 5, 1984 at which time Northland billed Air Vermont $9,575 for work in progress. The hangar project was never completed. No payment on the January 5 invoice has ever been made.

## DISCUSSION

Bankruptcy Code ("Code") section 547(c) limits Air Vermont's ability to avoid prepetition payments made during the preference period of Code section 547(b). In pertinent part, subsection (c)(2) provides that a debtor may not avoid a transfer

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

In the instant case, there is no dispute (1) that the December payment of $4,000 occurred 28 days after invoice and within 42 days of completion of the airport counter construction work, or (2) that the debt was incurred, and payment was made according to ordinary business terms, in the ordinary

course of business affairs of Air Vermont. As such, under section 547(c)(2), the December 6 payment of $4,000 is not avoidable as a preference.

The $3,800 payment of December 27 was made 49 days after invoice, and more than 45 days after the completion of the relevant work. The issue argued by the parties was whether this payment is excepted from avoidance under Code section 547(c)(4). As a setoff against the $3,800 payment, Air Vermont is willing to concede $339 representing obligations incurred by Northland on the hangar contract after the December 27 payment on the counter contract was made. Air Vermont seeks a turnover of the remaining $3,461.

In broad terms, Code section 547(c)(4) prevents avoidance of, and permits setoff with respect to, "new value" extended to the debtor under an open account or running account after the date the creditor receives a preferential transfer. The section embraces new credit used, *Buys of Jericho, Inc.*, 22 B.R. 1013 (Bankr.S.D.N.Y. 1982), utility service provided, *In re Thomas W. Garland, Inc.*, 19 B.R. 920 (Bankr.E. D.Mo.1982), services performed, *In re Saco Local Development, Corp.*, 25 B.R. 880 (Bankr.D.Me.1982), or any "money or money's worth in goods, services or new credit," § 547(a)(2); *In re Rustia*, 20 B.R. 131 (Bankr.S.D.N.Y.1982). The court has found no Code case construing contract claims, other than open or running account claims, to be within the protection afforded by section 547(c)(4). On this basis, the "new value" supplied by Northland on the hangar contract may not be offset against payments made on the airport counter contract. The result is that Air Vermont is entitled to recover $3,461 representing the $3,800 payment less the $339 which Air Vermont is willing to concede to Northland.

Assuming *arguendo* that for purposes of offset section 547(c)(4) governs any new value extended to the debtor in good faith after the debtor has received a preferential transfer, *see, Matter of Northeastern Turf Corp.*, 5 BCD 340 (Bankr.D.Ct.1979) *construing* the 1898 Bankruptcy Act, the same

result holds. If Northland may offset value advanced on the hangar contract against the preferential payment made with respect to the counter contract, it may do so only to the extent that such value was advanced after December 27, 1983. Northland advanced only $339 after December 27. Thus, Air Vermont is entitled to a turnover of the December 27 payment less $339 for new value furnished after the date of the $3,800 preferential transfer. *See generally,* 4 *Collier on Bankruptcy* (15th ed. 1979 rev. 1984) ¶ 547.39 at 547–121; *Barash v. Public Finance Corp.*, 658 F.2d 504, 509 (7th Cir.1981); *In re Valles Mechanical Industries, Inc.*, 20 B.R. 350, 352 (Bankr.D.Ga.1982).

In its memorandum of law Northland suggests that Air Vermont incurred no debt on the hangar contract until January 5, 1985 when, Northland alleges, it substantially completed work on the contract triggering Air Vermont's duty to pay. The argument is that the roughly $6,000 Northland advanced on the hangar contract was "given" after December 27, and may therefore appropriately be set off against the $3,800 payment. However, Code section 547(c) defenses are affirmative defenses and Northland has the burden to establish fully its section 547(c)(4) defense. In this regard, the date Northland completed substantial performance was not stipulated to by Air Vermont, nor does such matter appear in the facts of record. On this basis, Northland has failed to meet its burden and Air Vermont entitled to a turnover of $3,461. Judgment is to be entered accordingly.