In re MOLDED ACOUSTICAL PRODUCTS, INC., Debtor.

FIBER–LITE CORPORATION, Appellant,

v.

MOLDED ACOUSTICAL PRODUCTS, INC., Appellee.

Civ. A. No. 92–3700.
Bankruptcy No. 89–20868T.
Adv. No. 89–1077.

United States District Court,
E.D. Pennsylvania.

Jan. 20, 1993.

---

9. But see note 3, *supra,* pointing out that it is unclear why the award was fixed at $42,500 rather than $43,750.

Edmond M. George, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for debtor.

Charles J. Phillips, Reading, PA, for appellant.

## MEMORANDUM

BRODY, District Judge.

Before me is the appeal of the bankruptcy court's order of May 21, 1992 entering judgment in the amount of $204,612.33 in favor of debtor/plaintiff Molded Acoustical Products, Inc. ("MAP") and against creditor/defendant Fiber–Lite Corporation ("Fiber–Lite"). This appeal arises from an adversary proceeding initiated by MAP to avoid and recover pre-petition and post-petition transfers arising from invoice payments by MAP to Fiber–Lite throughout the 90 day period immediately prior to its filing a voluntary bankruptcy petition.

I am being called upon by appellant Fiber–Lite to decide:

(1) whether a bankruptcy court abuses its discretion by allowing a debtor to amend its complaint immediately prior to trial to include a claim to recover a post-petition check transfer that is factually related to the pre-petition transfers alleged in the complaint after the statute of limitations on post-petition claims has run? I find that it did not.

(2) whether a bankruptcy court clearly errs when it finds that a creditor did not rebut the presumption of the debtor's insolvency when the creditor puts on no direct evidence of the debtor's solvency and relies solely on its speculative cross-examination of the debtor's accountant to rebut the presumption that the debtor was insolvent? I find that it did not.

(3) whether the bankruptcy court clearly errs when it finds that a creditor does not establish that the transfers were "according to ordinary business terms" when the creditor's only evidence that the transfers were "ordinary" by industry wide standards was evidence of its own collection practices with one other delinquent customer and its subsidiary? I find that it did not.

## I. FACTS AND PROCEDURAL BACKGROUND.

Fiber–Lite is a company that sold and supplied fiberglass raw materials to appel-

lee MAP for use in its fiberglass molding processes. On May 26, 1989, MAP filed a petition for reorganization under Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, ("the Code"). On November 27, 1989, in the course of its reorganization, MAP instituted an adversary proceeding pursuant to 11 U.S.C. §§ 547(b) and 550(a)(1) to avoid and recover certain allegedly preferential transfers made by MAP to Fiber–Lite within the ninety (90) days prior to MAP's filing of its voluntary Chapter 11 petition.[1]

On November 11, 1991, three days before trial, MAP provided Fiber–Lite with copies of the canceled checks of the allegedly preferential transfers at issue. On the day before trial, counsel for Fiber–Lite raised the defense that Check No. 6497 in the amount of $41,670.93 and dated May 25, 1989 could not be avoided and recovered as a preferential transfer made prior to the initiation of the bankruptcy proceeding because the cancellation stamp indicated that, in fact, the check was not honored by the bank until four days after MAP filed its Chapter 11 petition. Fiber–Lite then denied MAP's request to stipulate to allow it to amend the complaint to include a claim for Check 6497 as an unauthorized post-petition transfer.[2]

At the November 14, 1991 trial before the Honorable Thomas Twardowski of the Bankruptcy Court of the Eastern District of Pennsylvania, MAP moved to amend its complaint to include a count pursuant to 11 U.S.C. § 549 to recover the amount of Check 6497 as a post-petition transfer. Fiber–Lite opposed the amendment to the complaint on the grounds that any claim for post-petition recovery of Check Number 6497 was time-barred by the two year statute of limitations set forth in 11 U.S.C. § 549(d)(1).

Judge Twardowski deferred ruling on the motion to amend until after the evidentiary hearing. At the trial, the parties stipulated that the amount of the pre-petition preferential transfers at issue, excluding Check 6497, was Four Hundred Fifty One Thousand Two Hundred Twenty Four Dollars and Seventy Four Cents ($451,224.74). (N.T. at 10.) The parties also stipulated that MAP received from Fiber–Lite and that Fiber–Lite invoiced MAP for "new product"—new value—in the amount of $269,328.04 which remained unpaid on the date that MAP filed its petition. (*See* Order of May 21, 1992 at ¶ 4.) The parties also stipulated that, post-petition, MAP had received stock from Fiber–Lite invoiced at $18,955.20 which remained unpaid. (*Id.* at ¶ 5.)

Judge Twardowski's order of May 21, 1992 entered judgment in favor of MAP and against Fiber–Lite in the amount of $204,612.33. The bankruptcy court's reasoning was as follows.

First, the court, citing the recent United States Supreme Court decision in *Barnhill v. Johnson*, —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), held that Check 6497 was not recoverable as a pre-petition transfer because, for purposes of Section 547(b), a transfer by check is deemed to occur on the date that the check is honored by the bank. Finding that Check 6497 was a post-petition transfer undertaken without authorization of the court, Judge Twardowski granted MAP leave to amend its complaint to include a claim for the post-petition transfer of $41,670.93.

Second, Judge Twardowski found that MAP was insolvent on the date that it filed its voluntary petition and at all relevant times pursuant to 11 U.S.C. § 547(f) which

---

**1.** The elements of a preferential transfer consist of: (1) a transfer of the debtor's property; (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition, or between 90 days and one year before date of the filing of the petition if the creditor was an insider; and (5) the transfer enables the creditor to receive more than he would have received if the case were a liqui-

dation case, the transfer had not been made, and the claims were allowed or disallowed to the extent permitted by Title 11. 11 U.S.C. § 547(b).

**2.** Pursuant to Section 549(a) of the Code, the trustee may avoid any transfer made after the commencement of the case that is not authorized by the Code or the court.

sets forth a ninety-day pre-petition presumption of insolvency.

Third, Judge Twardowski found that Fiber–Lite did not establish by a preponderance of the evidence the existence of a "course of business" relationship between itself and MAP. Section 547(c) of the Code provides that the debtor may not avoid a preferential transfer if the transferee can establish (1) that the transfer was in the ordinary course of business, 11 U.S.C. § 547(c)(2)(A); (2) that the transfer was in the ordinary course of dealings between the two parties, 11 U.S.C. § 547(c)(2)(B); and, (3) that the transfer was according to the ordinary terms in the industry generally, 11 U.S.C. § 547(c)(2)(C). Although Judge Twardowski found that the first two elements were "clear here," he held that Fiber–Lite's "industry terms" evidence of its dealings with another company and its subsidiary was, in fact, evidence only of its dealings with one entity other than MAP, and, thus, was not sufficient evidence of the existence of an industry standard for 11 U.S.C. § 547(c)(2)(C) purposes.

Although Fiber–Lite had received preferential transfers, Judge Twardowski also found that, pursuant to 11 U.S.C. § 547(c)(4) which allows a transferee to save a preferential transfer from avoidance if it can establish certain statutory elements, Fiber–Lite was entitled to setoff the stipulated amount of "new value" outstanding as of the petition filing date— $269,328.04—against the stipulated amount of pre-petition avoidable preferential transfers—$451,224.64. Fiber–Lite was also entitled to setoff the stipulated value of the post-petition stock transfer from Fiber–Lite to MAP—$18,995.20—from the total avoidable amount of the unauthorized post-petition transfer—$41,670.93.

Fiber–Lite now appeals this adverse judgment in the total amount of $204,-612.33 to this court pursuant to 28 U.S.C. § 1334(a). For the following reasons, I affirm the order of the bankruptcy court.

## II. THE ORDER ON APPEAL.

### A. Standard of review.

■ Fiber–Lite appeals both certain findings of fact and conclusions of law by the bankruptcy court. The findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Bankruptcy Rule 8013. The legal conclusions of the bankruptcy court are subject to plenary review by this court. *Goldberg v. New Jersey Lawyer's Fund*, 932 F.2d 273, 277 (3rd Cir.1991).

The fact-finding of the bankruptcy court is reviewed under the "clearly erroneous" standard; a finding of fact is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Fred Hawes Organization, Inc.*, 957 F.2d 239, 242 (6th Cir.1992).

### B. The bankruptcy court did not abuse its discretion in allowing MAP to amend its complaint to assert a claim for Check 6497 as a post-petition transfer.

■ Fiber–Lite first appeals Judge Twardowski's decision to allow MAP to amend its complaint to allege a claim to recover Check 6497 as a post-petition transfer. My review is of a discretionary decision by the bankruptcy court and my standard of review is abuse of discretion. *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886 (3rd Cir.1992) (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). A motion for leave to amend a complaint pursuant to Fed. R.Civ.P. 15(a), incorporated by Bankruptcy Rule 7015, should be freely granted at any stage of a case where the decision to allow amendment would prevent injustice and would cause no prejudice to the non-moving party. *See Carey v. Beans*, 500 F.Supp. 580, 582–83 (E.D.Pa.1980), *aff'd*, 659 F.2d 1065 (3rd Cir.1981).

■ Fiber–Lite argues that Judge Twardowski abused his discretion because the amendment "severely prejudic[ed] Fiber–Lite" and " 'reward[ed]' MAP's dilatory and non-responsive discovery practices,", specifically, MAP's failure to timely review the checks in its possession and MAP's

delay in producing the canceled checks to Fiber–Lite until three days prior to trial. (Appellant's Brief at 9–10.) Any consideration of delay as a basis for denying leave to amend the complaint must be coupled with a consideration of the resulting prejudice to the opposing party. *See Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 939 (3rd Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984).

Fiber–Lite's only basis for its claim that it was "prejudiced" is that the two-year statute of limitations on post-petition transfer claims had run by the date that MAP moved to amend its complaint. However, Fed.R.Civ.P. 15(c) contemplates statute of limitations problems and permits the relation back of amendments to the date of the original pleading "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...".

By its own admission, Fiber–Lite cannot "deny[ ] that the alleged preferential transfers and the post-petition transfer are factually related to an on-going business relationship existing at a time between MAP and Fiber–Lite." (Appellant's Brief at 10). Check 6497 was indisputably related to the pre-petition transfers in that it was transferred to Fiber–Lite for antecedent debt and it was issued by MAP prior to filing its bankruptcy petition.

Moreover, Check 6497 has been at issue since the initiation of the adversary proceeding. Relation back under Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction has been given all the notice that the statutes of limitations are intended to afford. 3 J. Moore, Moore's Federal Practice § 15.15[3] (2d ed. 1989).

Other decisions in bankruptcy courts have permitted amendments of the complaint to include post-petition transfers relating back to the date of the original complaint even where the transfers added by the amendment were not at issue in the original complaint. *See, e.g., In re Marlar*, 120 B.R. 51 (Bankr.N.D.Miss.1989). Therefore, it was not an abuse of discretion for Judge Twardowski to allow MAP's amendment of the complaint to assert a Section 549 claim for Check 6497 because Fiber–Lite admits that the check was factually related to the pre-petition transfers alleged in the original complaint and because Fiber–Lite had notice throughout the litigation that MAP sought to recover this transfer under a pre-petition claim.

C. *The bankruptcy court did not err in finding that MAP was insolvent in the 90 day period prior to filing its bankruptcy petition.*

Fiber–Lite next appeals Judge Twardowski's finding that MAP was insolvent during the 90 day period prior to filing its bankruptcy petition.

In order to avoid a preferential transfer, the debtor must prove that it was insolvent at the time of the transfer. 11 U.S.C. § 547(b)(3). For the purposes of avoiding a preferential transfer, "the Debtor is presumed to have been insolvent on and during the ninety (90) days immediately preceding the filing of the Petition." 11 U.S.C. § 547(f).

George Miller, MAP's court-appointed accountant, testified at trial that MAP's liabilities exceeded its assets and that MAP was insolvent as of November 1988 when MAP Acoustical of West Virginia defaulted on a loan to its secured lender. (N.T. at 14–15, 25.) MAP's Schedule of Financial Affairs reflected that MAP had assets valued at $4,443,933.00, based on their acquisition costs, and its total liabilities, excluding cross-collateral obligations, were $3,212,528.00.[3] Mr. Miller concluded that MAP was insolvent because, based on past attempts to liquidate the debtor's equipment in West Virginia, the sale of MAP's assets,

---

**3.** Mr. Miller testified to the recorded value of between "roughly three million and four million in assets." (N.T. at 21.) The specific recorded values of assets and liabilities in the Schedule of Financial Affairs were concurred to by both parties in their post-trial briefs to the bankruptcy court which are part of the record before me. (Debtor's post-trial brief at 3; Creditor's post-trial brief at 7.)

which had a limited "specialized use", would have derived proceeds substantially less than the liabilities. (N.T. at 24–25.) Mr. Miller further testified that MAP's balance sheets indicated that MAP had more than $7,000,000 in additional cross-collateralized obligations (N.T. at 21), thereby further demonstrating that its liabilities exceeded its assets during the relevant time period.

■ In the absence of any evidence rebutting the statutory presumption of insolvency, the debtor has met its burden of showing insolvency in relying upon the presumption. *In re Koubourlis,* 869 F.2d 1319, 1322 (9th Cir.1989); *In re P.M.R.C. Corp.,* 39 B.R. 912 (Bankr.E.D.N.Y.1984); *In re Jameson's Foods, Inc.,* 35 B.R. 433 (Bankr.D.S.C.1983).

■ The presumption that the debtor is insolvent on and during the 90 days immediately preceding the date of the bankruptcy petition may be rebutted if the creditor shows the debtor's assets were greater than its liabilities. *In re Maytag Sales and Service, Inc.,* 23 B.R. 384 (Bankr.Ga.1982). Therefore, Fiber–Lite was required to come forward with some evidence of solvency to rebut the presumption of insolvency established by Mr. Miller's testimony. *In re Philadelphia Light Co.,* 33 B.R. 734 (Bankr.E.D.Pa.1983).

■ A creditor attempting to overcome the presumption of insolvency must come forward with "evidence sufficient to cast into doubt the statutory presumption of insolvency, i.e., that the debtor's assets exceeded its liabilities." *In re World Financial Services Center, Inc.,* 78 B.R. 239, 241 (9th Cir. BAP 1987), *aff'd,* 860 F.2d 1090 (9th Cir.1988). Evidence constituting mere speculation as to whether the debtor was insolvent is not sufficient to rebut the presumption. *In re Emerald Oil Co.,* 695 F.2d 833, 838–39 (5th Cir.1983).

■ The entire sum and substance of Fiber–Lite's "rebuttal" of MAP's insolvency is its counsel's cross-examination of Mr. Miller as to the lack of "specific figures"—appraisals—corroborating Mr. Miller's opinion of the value of MAP's assets.

(N.T. at 24.) Mr. Miller responded that, "having liquidated many assets and many companies," his conclusion that MAP would realize less than $100,000 for its single use equipment was based on the prior offers received for the company's assets in West Virginia. (N.T. at 24–25.)

Fiber–Lite came forward with no direct evidence—either during its cross-examination of Mr. Miller or in its case in chief—to establish the actual value of MAP's recorded assets or its solvency. The cross-examination of Mr. Miller amounted to no more than the type of speculation that the above-cited decisions have warned against accepting as sufficient evidence to rebut the presumption created by the Code. Therefore, I find that Judge Twardowski did not err in finding that Fiber–Lite failed to rebut the presumption of insolvency established by MAP's evidence and that MAP was insolvent in the 90 day period prior to filing its petition.

D. *The bankruptcy court did not err in finding that Fiber–Lite did not sustain its burden under Section 547(c)(2) of the Code because it did not establish by a preponderance of the evidence that the transfers were according to "ordinary business terms" by industry wide standards.*

Fiber–Lite next appeals Judge Twardowski's finding that it did not sustain its burden of proof on its ordinary course of business defense to avoidance of the transfers.

■ Section 547(c)(2) of the Code provides that the trustee may not avoid a transfer to the extent that the transfer: (A) was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) was made in the ordinary course of business or financial affairs of the debtor and the transferee; *and,* (C) was made according to ordinary business terms. The creditor against whom recovery or avoidance is sought must prove that the transfer is not avoidable. 11 U.S.C. § 547(g) (emphasis added). This burden requires the creditor to prove all three elements of the defense by a preponderance of the evidence. *In re Fred Hawes Orga-*

*nization, Inc.*, 957 F.2d 239, 242 (6th Cir. 1992); *In re Richardson*, 94 B.R. 56, 59 (Bankr.E.D.Pa.1988.)[4]

Judge Twardowski found that Fiber–Lite established the first two elements and that finding is not on appeal. Fiber–Lite appeals, and I need only address, Judge Twardowski's finding that Fiber–Lite failed to meet the third element of the avoidance defense because Fiber–Lite failed to present sufficient evidence at trial that the transfers were made according to "ordinary business terms" as required by the Code.

Sections 547(c)(2)(A) and (B) require the court to determine whether the transfer was "ordinary" from a purely subjective viewpoint, *e.g.*, was it in the ordinary course of business between the two parties? Section 547(c)(2)(C), on the other hand, requires the court to examine the transfer from an objective viewpoint, *e.g.*, was it consistent with the industry wide norm? *In re Magic Circle Energy Corp.*, 64 B.R. 269, 272 (Bankr.W.D.Okla.1986.) Therefore, two distinct showings are required. *Samar Fashions, Inc. v. Private Line, Inc.*, 116 B.R. 417, 419 (E.D.Pa.1990); *In re Steel Improvement Co*, 79 B.R. 681, 684 (Bankr.E.D.Mich.1987). Because the Code does not define the term "ordinary", the court must make a factual determination of both the subjective and objective "ordinariness" of the transfer on a case-by-case basis. *In re Magic Circle, supra*, 64 B.R. at 273.

The issue becomes how much evidence and what type of evidence must a creditor introduce in order to meet the objective test that it is "according to ordinary business terms" by industry wide standards? The bankruptcy judge, who is in the unique position to hear the evidence and assess the credibility of the witnesses, has wide discretion to determine whether the factual evidence submitted was sufficient to enable the court to determine whether the transfer at issue was "ordinary" according to industry wide standards.

The recent Sixth Circuit decision in *In re Fred Hawes Organization, Inc.*, 957 F.2d 239 (1992) provides long awaited guidance on the proper evidentiary standards to establish the industry standard requirement. In that case, the creditor relied upon its dealings with 1,500 of its subcontractors as its evidence of an industry standard. The bankruptcy court held that the creditor failed to meet its burden of proof on the objective prong. The bankruptcy court found that the testimony of the creditor's president as to the creditor's own practices lacked sufficient credibility and reliability to establish the objective prong when that was the only evidence presented on the "ordinariness" of the transfers by industry standards. *Id.* at 246. The Sixth Circuit affirmed, holding that the objective prong requires the court to "not only look at the manner in which one particular creditor interacted with other similarly situated debtors" and that it was not error to require the creditor to come forward with "evidence as to similar and independent creditors' dealings with similar and independent customers." *Id.*[5]

**4.** In *Barnhill v. Johnson*, —— U.S. ——, —— n. 9, 112 S.Ct. 1386, 1391 n. 9, 118 L.Ed.2d 39 (1992), which held that, for purposes of § 547(b), a transfer by check was deemed to occur on the date that the check is honored, the United States Supreme Court noted that "[t]hose Courts of Appeal to have considered the issue are unanimous in concluding that a date of delivery rule should apply to check payments for purposes of § 547(c) ... We, of course, express no views on that issue, which is not properly before us." Therefore, Fiber–Lite could assert an ordinary course of business defense to MAP's § 549 post-petition claim for Check 6497 as well as to MAP's § 547 pre-petition claims because Check 6497 was delivered prior to MAP's filing its bankruptcy petition.

**5.** In *In re Richardson*, 94 B.R. 56 (Bankr.E.D.Pa. 1988), the court, having found that the creditor failed to demonstrate that the transactions between the parties were "ordinary" under the subjective prong, nonetheless went on to comment that the testimonial evidence presented by the transferee, the Philadelphia Housing Authority, of its "industry" practice was insufficient to meet the objective prong because it did not present any documentary evidence of the terms of other rental repayment agreements that it entered into that were similar to the rental repayment agreement that the debtors sought to avoid.

By comparison, in *In re Atlantic Fish Market*, 100 B.R. 755 (Bankr.E.D.Pa.1989), the court

Judge Twardowski held that Fiber–Lite did not establish an ordinary course of business defense by a preponderance of the evidence because its evidence of its business dealings with one other entity in addition to MAP was not sufficient evidence of the existence of an industry standard for Section 547(c)(2)(C) purposes. To meet this requirement at trial, Fiber–Lite presented evidence of industry standards consisting of its payment practices with two customers, one an admitted subsidiary of the other. (Appellant's Brief at 17; N.T. at 72.) Fiber–Lite protests that these two customers were billed separately and, in its reply brief, reiterates that these two customers, together, constituted 60% of its business "in this market." (Reply brief at 3.) Fiber–Lite further contends that "seven (7) companies Fiber–Lite left out of its industry standard analysis were not similar to Plaintiff for collection purposes." *Id.*[6] It is undisputed that the two customers used by Fiber–Lite to establish an industry standard were delinquent in their payments and subsequently became insolvent and entered bankruptcy. (N.T. at 74.) Thus, by their nature, these customers were not germane to the "ordinary" business inquiry.

Although the Code sets forth no firm rule as to the quantum of evidence required to sustain the burden set forth by Section 547(c)(2)(C), it was incumbent on Fiber–Lite to present Judge Twardowski with sufficient evidence to establish that the collection practices at issue conformed to the industry standard of collection practices. As Fiber–Lite concedes in its brief,

the "general policy of the preference section ... is to discourage *unusual action* by either the debtor or the creditors during the Debtor's slide into bankruptcy." (Appellant's Brief at 19 quoting *In re Advance Glove Manufacturing Co.*, 761 F.2d 249 (6th Cir.1985).) Therefore, in light of Fiber–Lite's failure to introduce any other evidence as to industry standards except for its president's testimony as to its own collection practices with another delinquent customer and its subsidiary, I find that Judge Twardowski did not err in holding that Fiber–Lite failed to establish an industry standard, a requisite element to defeat avoidance of the transfers, and, thus, failed to meet its burden of proof on the third element of the defense to the debtor's avoidance powers.

In the alternative, Fiber–Lite asks me to take the extraordinary step to hold that the ordinary course of business defense to the trustee's avoidance powers should no longer require any proof of industry wide standards and practices to establish the "objective" ordinariness of the transfer according to "ordinary business terms."

Fiber–Lite cites no cases from any courts—bankruptcy, district, or appellate—within this circuit that indicate any discussion or consideration of abandoning the necessity of presenting evidence of industry standards. Therefore, I decline to hold that the industry standard evidence should be abandoned as requirement to establish an ordinary course of business defense to the avoidance of preferential transfers.

found that the transferee's own testimony *and* the testimony of the president of a wholesale distributor and importer in the seafood industry to be credible evidence of payment terms in the seafood industry, and, thus, satisfied the objective prong that the transfer at issue was ordinary by industry wide standards. I also note that in the *Magic Circle* case, *supra,* the court remarked upon the lack of direct evidence on industry terms, but took judicial notice that the workout at issue was within "ordinary business terms" because the court was sufficiently familiar with the standards of the oil and gas industry. 64 B.R. at 275.

**6.** The following exchange took place on cross-examination at trial:

Q: "What happened to the other seven companies, why weren't they included in the analysis?"

A: "The other companies were not similar to MAP from the standpoint that the collection practice used with them was not the same as what we did use with MAP. The MAP collection procedure was identical to the process we used with Van Dresser and Renaissance."

.　　.　　.　　.　　.

Q: "So it's your opinion that the other seven companies don't have anything to do with an industry standard?"

A: "The similarity and the chart is to represent Fiber–Lite's ordinary course of collecting payments from customers who are delinquent in payments...." (N.T. at 73–74.)

## III.  CONCLUSION.

For the foregoing reasons, I affirm Judge Twardowski's order of May 21, 1992 entering judgment in the amount of $204,-612.33 in favor of MAP and against Fiber–Lite.