SUSAN C. YOCUM and GREG C. YOCUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yocum v. Commissioner
Docket No. 4950-81.
United States Tax Court
T.C. Memo 1985-447; 1985 Tax Ct. Memo LEXIS 185; 50 T.C.M. (CCH) 906; T.C.M. (RIA) 85447; August 26, 1985. *185 Ys failed to report substantial amounts of income earned in connection with the transportation of marijuana from Mexico to the United States. Held, Ys are liable for additions to tax for fraud under section 6653(b). Greg C. Yocum, pro se. Marikay Lee-Martinez, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
1974
$13,908.79
$6,954.40
1975
15,903.09
7,951.55
On March 5, 1981, petitioners filed with *186 the Court a copy of the notice of deficiency for the years in issue and a letter in which they stated that they wished to contest respondent's deficiency determinations and additions to tax for fraud. The form and content of petitioners' letter, however, did not comply with the requirements for a proper petition set forth in Rule 34. By order dated March 18, 1981, we therefore directed petitioners to file a proper amended petition and to pay the appropriate filing fee on or before May 18, 1981. Having received no response to this order, the Court issued an order dated June 4, 1981, directing petitioners to file a proper amended petition by July 6, 1981, or to show cause at a July 22, 1981, motions session why this case should not be dismissed as to respondent's income tax deficiency determinations. On July 22, 1981, petitioners filed a response to the Court's order to show cause in which they stated that they would not file an amended petition. When this case was called from the July 22, 1981, motions calendar, petitioners failed to appear. By order dated July 22, 1981, we made the Court's June 4, 1981, order to show cause absolute and dismissed petitioners' case as to the deficiency *187 determinations for failure to properly prosecute. We further ordered that petitioners' case as to the additions to tax for fraud would be calendared for trial in due course. At such trial, which was held at Phoenix, Arizona, on December 5, 1984, only petitioner Greg C. Yocum (hereinafter referred as "petitioner") appeared. The sole issue for decision, therefore, is whether petitioners are liable for additions to tax for fraud under section 6653(b). FINDINGS OF FACT Sometime during the late 1960s, having completed one year of study at the University of Arizona, petitioner was drafted into the Army and served eight months in Vietnam as a machine gunner and squad leader. While serving in Vietnam, petitioner was wounded and subsequently hospitalized. After his release from the hospital in 1969, petitioner enrolled in flight training school and eventually received both a private and commercial pilot's license. During 1974 and 1975, petitioner piloted airplanes loaded with marijuana from Mexico to Arizona. Petitioner received compensation of $61,417.31 and $55,847.70 in 1974 and 1975, respectively, for the performance of these services. Petitioners failed to report these amounts *188 as income on their 1974 and 1975 Federal income tax returns. During 1974 and 1975, petitioner paid predominantly cash for the following assets: Consideration
Asset
Cash
Other
Cadillac Eldorado
$ 9,271.94
$ 4,402.69 (Trade In)
Draperies
1,942.21
Airplanes (2)
40,000.00
2,000.00 (Check)
Swimming Pool
4,470.00
1,730 (Check)
Houses (2)
45,393.27
85,800.73 (Mortgage)
Furniture
1,109.82
GMC Truck
3,318.70
2,050 (Trade In)
Stereo Equipment
4,498.64
TOTAL
$110,004.58
$95,983.42
Petitioner's cash transactions were generally made in denominations of one hundred, fifty and twenty dollar bills. In 1977, the Supreme Court of the State of Arizona in and for the County of Pima convicted petitioner of the unlawful sale of marijuana, conspiracy second degree, and unlawful transportation of marijuana. On September 15, 1978, the Court of Appeals for the State of Arizona reversed and remanded petitioner's convictions, finding that the convictions were based on illegally seized evidence. Following the reversal of his convictions, petitioner agreed to work as an informant for the Narcotics Strike Force in Tucson, Arizona. In return, *189 the Narcotics Strike Force agreed not to prosecute petitioner again. While working for the Narcotics Strike Force, petitioner was approached by an individual attempting to purchase large amounts of cocaine with counterfeit money. Petitioner reported this incident to the United States Attorney's Office in Tucson, Arizona. On July 4, 1979, petitioner entered into the following handwritten agreement with the United States Attorney's Office: Greg Yocum will attempt to locate $1,000,000.00 in counterfeit money and the plates used to make the money with subsequent arrests of subjects involved in this conspiracy. In return the subject Jeff Long will not be prosecuted for his involvement in this conspiracy case and Greg Yocum will receive $15,000.00 $5,000.00 from Secret Service 2,000.00 from Narcotics Strike Force 4,000.00 from Pima Co. S.O. 2,000.00 from Tucson Police Dept. 2,000.00 from Pima Co. Attorney's Ofc. (88 crime) If only the $1,000,000.00 in counterfeit money is located and subsequently seized along with additional arrests in this conspiracy case then Greg Yocum will receive $7,500.00 and Jeff Long will not be prosecuted for his involvement in this conspiracy case. *190 Any counterfeit money seized not close to $1,000,000.00 figure as stated above, payment will have to be negotiated after the seizure. Greg Yocum agrees to testify truthfully in any resulting court procedures in any court, federal or state, before either petit or grand juries, when asked to do so by either federal, state or county authorities. Bates Butler, an attorney with the United States Attorney's Office in Tucson, Arizona (later, United States Attorney for Arizona) and Neil Tietjen, a member of the Narcotics Strike Force in Tucson, Arizona, signed this agreement on behalf of the United States Attorney's Office. On their 1974 and 1975 Federal income tax returns, petitioners reported the following items of income: 1974
1975
Wages
$5,346
$330
Interest
162
60
Other Income
[2] 3,146
[3] 627
Petitioners attached Form W-2s to their income tax returns for the years in issue indicating that Susan Yocum earned wages in the amounts of $5,346 and $330 as a school teacher during 1974 and 1975, respectively. *191 In the notice of deficiency respondent, relying on the source and applications of funds method, determined that petitioners failed to report income of $61,417.31 and $55,847.70 in 1974 and 1975, respectively. Petitioner at trial did not contest these figures. Respondent further determined that all or part of the underpayment of tax for the years in issue was due to fraud. OPINION Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. . Respondent has the burden of proving fraud. Section 7454(a); Rule 142(b). In order to sustain his burden, respondent must show by clear and convincing evidence actual and intentional wrongdoing on the part of petitioner with intent to defraud the revenues. . This burden may be met with circumstantial evidence. , affd. . We must, nevertheless, be mindful that fraud cannot be inferred from a mere inadvertent understatement of income, , *192 or from a deficiency in taxes due to an honest mistake or poor judgment. . The evidence in this case clearly establishes that at least part of petitioners' tax underpayment for the years at issue was intentional and not the result of an inadvertent omission or an honest mistake. Petitioner conceded at trial that income was underreported in 1974 and 1975 by very substantial amounts. We have previously held that "consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, are persuasive evidence of fraudulent intent to evade taxes." . Moreover, petitioner testified at trial that he generally disclosed all of his income to his income tax preparer. For the years in issue, however, petitioners, except for one $3,146 item, disclosed only income reported on Susan Yocum's Forms W-2. The record clearly establishes, therefore, that petitioners understood that they were required to report income from whatever source derived, but chose to report only income subject to documentation by third parties. *193 Additionally, the record establishes that petitioner engaged in substantial cash transactions during the years in issue to avoid documentation of the unreported income he received during 1974 and 1975. In 1974, petitioner purchased a single-engine airplane from Lawrence Wohlers (Wohlers) for cash in the amount of $22,500. Wohlers stated at trial that petitioner had suggested that the consideration for the airplane consist of cash. In 1975, petitioner again paid cash of $17,500 to purchase a second airplane. Clayton Scott (Scott), the seller of the airplane, noted at trial that although he had requested payment in the form of a cashier's check, petitioner paid him with an assortment of one hundred, fifty and twenty dollar bills. Scott testified that a cash transaction of this type was very unusual in his business as a dealer in aircraft. In 1975, petitioner paid Marian Bangs, an escrow officer at Transamerica Title Insurance Company, cash totaling $20,893.27 in connection with the purchase of certain property located in Greenley County, Arizona. Bangs testified that it was very unusual for her escrow company to engage in cash transactions of this type. Thus, on the record *194 before us, we conclude that respondent has satisfied his burden of proof. Petitioners' failure to report substantial amounts of income for the years in issue and petitioner's use of cash transactions to avoid documentation of the unreported income is clear and convincing evidence that petitioners' fraudulently underpaid their tax in 1974 and 1975. Petitioners nevertheless argue that because of petitioner's drug addiction during the years in issue, he was mentally incapable of having fraudulent intent when he signed his 1974 and 1975 Federal income tax returns. Petitioner described at trial the severity of his drug addiction as follows: During 1972, '73, well I guess around 1972 I started getting involved real heavily into drugs. By 1973 -- THE COURT: You mean? MR. YOCUM: I was doing it myself. I was an addict. During 1973, '74, '75 and so on it got progressively worse. It cost me about three to five hundred dollars a day to stay healthy. In order to take care of my habits, I was pretty bold, you know I had to take care of myself so to speak. I started flying, going into Mexico. I went into Mexico and met with some Mexicans, borrowed an airplane in the U.S. and I started *195 flying contraband, mostly to take care of my bad habit that I had. During '74 and '75, because I was doing three to five hundred dollars worth, that's what it took just to stay fairly normal, I wasn't very really emotionally stable. That's why I testified earlier that I really don't recall signing the tax forms, making them out, meeting with anybody. Regardless of the existence of petitioner's drug addiction during the years in issue, his testimony regarding the details of the services he performed to support his expensive drug habit conclusively establishes that he was conscious of the income his illicit work was generating and the fact of filing returns establishes his awareness of his responsibility for doing so. In , the Court refused to find fraud when psychiatric evidence presented at trial established that petitioner suffered from a severe psychosis rather than a neurosis or milder emotional disturbance. In the instant case, however, petitioner presented no psychiatric evidence supporting his contention that his drug addiction rendered him mentally incapable of having fraudulent intent during the years in issue. *196 Petitioner testified with great sincerity that as of the time of trial he had overcome his drug habit, had sought and accepted spiritual guidance and was earning a livelihood by legitimate means, all of which, if true, is certainly commendable. Basically, petitioner seeks a commutation of the addition to tax for fraud based upon his good behavior subsequent to the tax years in issue. As repeatedly explained to petitioner by the Trial Judge, however, this Court is charged solely with the duty of redetermining deficiencies, including the addition to tax for fraud, and as prescribed by statute. We therefore do not take petitioner's asserted rehabilitation into consideration in deciding this case. Petitioner finally argues that in 1979 the United States Attorney's Office orally promised him immunity from civil tax liability for 1974 and 1975 in exchange for his assistance in a criminal investigation of certain individuals engaged in the printing of counterfeit money. The record, however, does not support petitioner's argument. On July 4, 1979, Bates Butler (Butler) [4] and Neil Tietjen (Tietjen) signed an agreement on behalf of the United States Attorney's Office offering petitioner *197 cash payments for information leading to the arrest of certain individuals engaged in the printing of counterfeit money. This agreement, however, contains no language suggesting that petitioner was granted immunity from his civil tax liabilities. Moreover, both Butler and Tietjen testified that they did not promise petitioner immunity from his civil tax liability. We found their testimony credible on this point and accept it as true. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section referencs are to the Internal Revenue Code of 1954 in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners' "other income" for 1974 consisted of $3,120 earned by petitioner as an agent for Caballero Realty and a state income tax refund of $26. ↩
3. Petitioners' "other income" for 1975 consisted of capital gains in the amount of $1,713, a state income tax refund in the amount of $9, less a farm loss in the amount of $1,095.↩
4. Bates Butler served as United States Attorney for Arizona in 1980 and 1981.↩