In re Frederick and Janice
FERNANDEZ, Debtors.

Frederick and Janice
FERNANDEZ, Plaintiffs,

v.

INTERNAL REVENUE
SERVICE, Defendant.

Bankruptcy No. B87–3161.
Adv. No. B89–0352.

United States Bankruptcy Court,
N.D. Ohio, E.D.

March 30, 1990.

John D. Sammon, Cleveland, Ohio, for plaintiffs.

Richard J. French, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

Joanne C. Rutkowski, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the Debtors' complaint to determine dischargeability of certain tax obligations owed by the Co-debtor, Frederick Fernandez to the Internal Revenue Service (IRS). Following a trial on the issues, a review of the evidence admitted and of the arguments of counsel, it is herein determined that the subject tax obligations are nondischargeable.

### I.

This is a core proceeding in which the relevant facts are generally not in dispute.[1] Co-debtor Frederick Fernandez, a former vice-president of personnel and labor relations at Cook United, Inc., scheduled unpaid tax liabilities for himself for the years 1979 through 1982 totalling $214,037.00. Co-debtor, Janice Fernandez, scheduled unpaid tax liabilities for herself for 1980 and 1981 in a total amount of $2,306.00. These tax obligations were scheduled as secured debt to the extent that equity existed in their personal residence and personal property, with the remainder being scheduled as unsecured debt. Ultimately, the Debtors received a discharge in their Chapter 7 case, and the case was closed. It is undisputed that prior to discharge, no objection

was filed by the IRS respecting the dischargeability of these debts. After their case was closed, the Debtors were notified by the IRS that collection efforts would ensue on the tax liabilities of Frederick Fernandez (Fernandez). The instant adversary proceeding pertains only to the tax liabilities of Frederick Fernandez for tax years 1979, 1980 and 1981.

Fernandez failed to timely file federal tax returns for years 1979, 1980 and 1981. Prepetition, on April 30, 1986, Fernandez entered a plea of guilty to one count of a three-count information which charged him with willfully failing to file an income tax return for the year of 1979 in violation of 26 U.S.C. § 7203. He was sentenced to a one-year imprisonment, with all but ninety days suspended. He was further placed on probation for five years, fined $7,000.00, and was ordered to pay all IRS tax liabilities for years 1979, 1980 and 1981. In 1983, he eventually filed the returns for the aforesaid years. Upon the reopening of the case, the instant complaint to determine dischargeability of Fernandez's tax liabilities for years 1979 through 1982 was filed, among other specified relief sought.

### II.

The dispositive issue is whether Fernandez's subject federal tax liabilities are excepted from discharge under provisions of § 523 of the U.S. Bankruptcy Code [11 U.S.C. § 523]. In support of their complaint, the Debtors allege that the IRS never objected to their receipt of a discharge, nor did it seek a determination of debt dischargeability. As a result, the Debtors received their discharges on December 15, 1987. They contend that the IRS made no contact with them until sixteen months after they had been discharged in bankruptcy, informing them that collection efforts would be pursued regarding Fernandez's tax liabilities. The Debtors further alleged that Fernandez was never the subject of an IRS civil fraud penalty and was not charged or convicted with a willful failure

---

1. The Debtors' voluntary Chapter 7 petition was filed on September 8, 1987. A discharge was entered and the case was closed. Upon the

Debtor's motion to reopen the case, the case was reopened, and the instant adversary proceeding ensued.

to evade or defeat any tax violation of 26 U.S.C. § 7201.

 Contrary to the Debtors' allegations, the IRS asserts that provisions of § 523(a)(1)(C) did not obligate it to seek a determination of dischargeability prior to the Debtors' receipt of a bankruptcy discharge. Additionally, and notwithstanding Fernandez's guilty plea to a one-count violation of 26 U.S.C. § 7203, the IRS contends that he willfully attempted to evade or defeat the payment of federal income taxes for the subject tax years. In addressing the principal issue and the parties' respective contentions, the Court is mindful of the fact that the burden of proving nondischargeability is upon the party espousing that position. Such burden is to be met by clear and convincing evidence. In the matter at bar, the burden of proof is upon the IRS, since it contends that the subject taxes are nondischargeable.

### III.

An examination of the evidence and the record, generally, reveals that Fernandez, while employed as a Cook vice-president, executed an Employee's Withholding Allowance Certificate (Form W-4) on September 6, 1978 (Ex. A). That W-4 instructed Cook to deduct $100.00 per month as a withholding for federal income tax purposes (Testimony, Frank Shega). To effect this deduction, a payroll code "90" was entered on this W-4 form which instructed Cook's payroll department to ignore the employee's schedules for withholding and look only to the employee's W-4 form for the amount of income tax to be withheld. At the time he executed the W-4, Fernandez had gross earnings of $65,000.00 a year. For the tax year ending December 31, 1979, his gross income was $75,969.00. (Ex. F). He was married, with two dependent children. As a result of this W-4 form execution, an amount of $2,180.00 was deducted from Fernandez's salary for tax year 1979. This occurred at a time when federal withholding tax tables required tax withholdings of an amount in excess of $21,000.00 for a gross income of $75,969.00, based upon four exemptions. Fernandez failed to timely file a federal tax return for 1979. Similarly, in 1980, Fernandez continued having the $100.00 monthly tax deductions from his gross wages for a total of $1,307.91 based on his W-4 executed in 1978. His 1980 gross earnings were $77,296.00, upon which federal withholding tax tables would have required withholdings in excess of $21,000.00 rather than $1,307.91 actually deducted (Ex. G). Again, in 1981, the $100.00 monthly deductions continued at a time his gross earnings were reported at $83,779.00 (Ex. H). Actual 1981 tax deductions totalled $1,480.12, at a time when the federal tax tables required withholdings in excess of $21,000.00 against gross income of $83,779.00 claiming four exemptions.

The evidence further revealed that during the course of an investigation by IRS special agents at the Debtor's residence on June 30, 1982, he informed the agents that he had filed and paid his tax return for 1979; had filed but not paid his tax return for 1980; and had not filed his 1981 return but had forwarded his records to his tax preparer. (Testimony, Walter G. Lyons). In fact, neither tax return was received by the IRS until October 21, 1982 (Ex. F.). The testimony of Fernandez in this regard was incredible. His tax liabilities for years 1979, 1980 and 1981 were $25,255.00; $26,414.00; and $29,700.00, respectively. He made no voluntary payments towards any of these tax liabilities. Any payments made occurred involuntarily as a result of the IRS' garnishment of his earnings. Ostensibly, this collection activity by the IRS precipitated the bankruptcy filing.

Fernandez presents himself as a rather intelligent individual with knowledge of personnel matters. While the nominal monthly deductions of $100.00 were being made from Fernandez's earnings, he executed no other W-4 forms to reflect a change in his withholdings during 1979, 1980, or 1981. (Testimony, Fernandez). He failed to pay his tax liabilities for those years and was not truthful with the IRS agents regarding the filing status of his returns during their investigation in October of 1982. *Id.* He made arrangements

to file his 1979, 1980 and 1981 tax returns after the IRS agents' visitation. *Id.* Incredibly, Fernandez testified that he was unaware of the increase in his periodic pay checks caused by the nominal amounts deducted for tax purposes.

Although the Plaintiff-debtor placed much emphasis on the fact that his parents were killed in an automobile collision in March of 1980, it is rather apparent from Fernandez's testimony that such occurrence had no unusual adverse effect upon his emotional state or ability to perform his job. (Direct Exam., Fernandez).

### IV.

Exceptions to the discharge of a debt are addressed under § 523 of the Bankruptcy Code [11 U.S.C. § 523]. In relevant part, § 523(a) provides:

(a) A discharge under section 727—of this title does not discharge an individual debtor from any debt—

(1) for tax or a customs duty—

· (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax. [11 U.S.C. 523(a)(1)(C) ]

An examination of the legislative history of § 523(a) provides a clearer understanding of its objectives. Section 523(a)(1) represents a compromise position advanced by the House bill and Senate amendment 124 Cong.Rec. H11095, H11096, H11113 (Sept. 28, 1978. Statement of Rep. Edwards and Sen. Deconcini). Of the nine kinds of debts excepted from discharge under § 523(a), subsection (a)(1) addresses the dischargeability of taxes. The intent of subsection (a)(1) is to preclude the discharge of tax obligations on which the debtor made a fraudulent return or willfully attempted to évade or defeat a tax liability. Section 523(a)(1) further prevents the discharge of a tax liability where a tax return was not filed after the due date and after one year before the bankruptcy petition is filed. H.R.Rep. No. 595, 95th Cong., 1st Sess., 363–64, reprinted in 1978 U.S. Code Cong. & Admin.News 5963, 6319. The various subsections of § 523(a) include

tax obligations where the tax authority has failed to file a claim against the estate or where the claim was filed late. S.Rep. No. 989, 95th Cong., 2d Sess., 77, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5864. Section 523(a) is also intended to bar the discharge of a tax obligation where the debtor filed a fraudulent return, entry or invoice, or fraudulently attempted to evade or defeat any tax. *Id.* Where fraud or fraudulent attempt is found, the date of the taxable year in which the fraud occurred is immaterial. *Id.*

In the present adversary proceeding, Fernandez argues that the taxes are dischargeable since no civil fraud penalty was ever assessed against him and that he was not convicted or charged with a violation of 26 U.S.C. § 7201. Such argument is without merit. The absence of a civil fraud penalty does not render an otherwise nondischargeable debt dischargeable. To bar discharge, only the elements under § 523(a)(1) need be addressed for the particulars of this action. Nondischargeability under subsection (C) is not limited to a finding of a fraudulent return. As its language clearly expresses, it alternatively bars a debt from discharge where an individual debtor willfully attempted "in any manner" to evade or defeat the payment of a tax obligation. 11 U.S.C. § 523(a)(1)(C). Furthermore, the Bankruptcy Court is not constrained in its determination of dischargeability to the findings of an adjudicated criminal judgment as the Debtor suggests. Section 523 affords the parameters of dischargeability which must be considered.

Fernandez's allegation that the IRS failed to file a complaint to determine the dischargeability of his debts is without merit. It is true that the IRS did not commence such an adversary proceeding prior to Fernandez receiving his discharge in bankruptcy. No such action by the IRS is required under § 523(a)(1). Dischargeability actions are only required in Chapter 7 adversary proceedings which are based on fraud, false pretenses, misrepresentation, or a false financial statement, embezzlement or larceny or fraud or defalcation

by a fiduciary, or where there is alleged willful and malicious injuries to persons or property. See, 11 U.S.C. § 523(a)(2), (4) and (6). Therein, a creditor must file an objection to the granting of a discharge no later than sixty days after the first date set for the meeting of creditors under § 341, unless a timely request for extension is approved by the Court. Under § 523(a)(1), there is no sixty-day limitation and, thusly, the IRS properly exercised its discretion in choosing not to file a dischargeability action. *See, In re Galbreath*, 83 B.R. 549 (Bankr.S.D.Ill.1988); R. Ginsburg, *Bankruptcy* § 12,653 (1986).

■ Herein, the co-debtor, Fernandez, not only failed to file his 1979, 1980 and 1981 tax returns when due, he never made a voluntary payment on his tax liabilities for those years. Since Fernandez was criminally convicted on his 1979 tax obligations, further examination of his 1980 and 1981 tax liabilities is warranted. As a corporate vice-president, he was certainly aware that his tax withholdings for 1979, 1980 and 1981 were substantially less than his corresponding tax liabilities for tax years 1976, 1977 and 1978. This substantial change in his tax withholdings was initiated by Fernandez himself when he executed a W–4 form in 1978, with a "Code 90" entry to effectuate a reduction in his withholdings that continued through 1982. Such conduct was a deliberate attempt to avoid payment of his tax liabilities and is nondischargeable under § 523(a)(1)(C). The evidence is unrefuted that he spoke untruthfully to the IRS agents when he told them that he had paid his 1979 taxes and had filed his 1980 return in mid–1982. The evidence is further clear to reflect that he only filed his tax returns for each of the three years after he had been contacted by the IRS special agents. Even with that incentive, he never paid his taxes for those years. His conduct in this regard was both willful and evasive of his tax obligations which were due and owing. Thusly, the government's burden of proof has been met by clear and convincing evidence.

■ Fernandez was convicted on a guilty plea of failing to pay his 1979 income taxes in violation of 26 U.S.C. § 7201. Although his conviction only regarded his 1979 tax obligation, a special condition of his probation required him to pay all tax liabilities for 1979, 1980 and 1981. The U.S. Supreme Court held in *Kelly v. Robinson*, 479 U.S. 36, 53, 107 S.Ct. 353, 363, 93 L.Ed.2d 216 (1986), that all restitution orders in criminal proceedings are nondischargeable in bankruptcy pursuant to § 523(a)(7). Fernandez's special condition of probation constituted a nondischargeable restitution order since he failed to comply with the condition.

Accordingly, judgment is hereby rendered in favor of the IRS, and Fernandez's tax obligations for 1979, 1980 and 1981 are hereby determined to be nondischargeable.

IT IS SO ORDERED.