John C. BERKERY, Appellant,

v.

COMMISSIONER, INTERNAL
REVENUE SERVICE,
Appellee.

Civ. A. No. 94–1412.
Adv. No. 92–2081.
Bankruptcy No. 91–23954T.

United States District Court,
E.D. Pennsylvania.

Feb. 22, 1996.

John R. Crayton, Crayton and Belknap, Bensalem, PA, for John C. Berkery.

John C. Berkery, Flourtown, PA, pro se.

Shannon L. Hough, Tax Div., U.S. Dept. of Justice, Washington, DC, for Commissioner, I.R.S.

Edward M. Mazze, Doylestown, PA, pro se.

Frederic Baker, Trustee, Philadelphia, PA, pro se.

### MEMORANDUM

TROUTMAN, Senior District Judge.

This bankruptcy appeal arises out of a January 6, 1994, order of the United States Bankruptcy Court for the Eastern District of Pennsylvania. The appellant, debtor John Berkery initiated an adversary proceeding in United States Bankruptcy Court by filing a Complaint to determine the dischargeability of his 1980 and 1981 federal income tax debts. After a hearing on August 2, 1993, the bankruptcy court concluded that appel-lant's income tax debt was excepted from discharge under 11 U.S.C. § 523(a)(1)(C), finding that the appellant had made fraudulent returns and willfully attempted to evade the taxes. The appellant now appeals from this ruling.

## JURISDICTION AND STANDARD OF REVIEW

The January 6, 1994, bankruptcy order is a final order entered in a core proceeding under 28 U.S.C. § 157(b)(2)(E). This Court has jurisdiction over the appeal under 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a).

In cases originating in the bankruptcy court, this Court occupies the first level of appellate review. It is settled law that our role is to apply a clearly erroneous standard to findings of fact, while applying a de novo standard of review to questions of law. *In re Molded Acoustical Prod., Inc.,* 150 B.R. 608, 612 (E.D.Pa.1993); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). Additionally, mixed findings of fact and law must be separated, with the appropriate standard applied to each component. *See e.g., Resyn Corp. v. United States,* 851 F.2d 660, 664 (3d Cir. 1988); *In re Jersey City Medical Center,* 817 F.2d 1055, 1059 (3d Cir.1987).

With respect to the "clearly erroneous" standard, the Supreme Court has stated, "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) *quoted* in *Anderson v. City of Bessemer, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

### I.

We summarize only those facts and prior proceedings believed relevant to an understanding of the issues raised on appeal. The facts are either not disputed or subject to dispute.

Appellant, John Berkery, (hereinafter "appellant") a citizen of both the United States and Ireland, filed income tax returns for the years 1980 and 1981 in the amounts of $44,810.00 and $53,000.00. The IRS determined that these amounts were underestimated by $364,237.29 in 1980 and $209,606.00 in 1981. and that appellant's additional income was derived from the sale of phenyl acetone (P-2-P), an illegal substance used in the manufacture of methamphetamine (speed). *See, Berkery v. Commissioner,* 91 T.C. 179, 1988 WL 77545 (1988). Appellant does not dispute that he was engaged in illegal drug transactions.[1] (*See,* Transcript of bankruptcy hearing, p. 6–7, hereinafter "Trans.").

On January 18, 1982, appellant was named in a fourteen count indictment alleging one count of conspiracy to distribute (P-2-P) and methamphetamine, nine counts of possession with intent to distribute P-2-P, and four counts of possession with intent to distribute methamphetamine. *Berkery v. Commissioner,* 91 T.C. at 181. Appellant fled the country and became a fugitive from justice until his arrest in 1987.[2]

Appellant subsequently petitioned for a trial in United States Tax Court to challenge the IRS deficiency determination. A trial was held on December 11, 1986 in Philadelphia, Pa. before the Honorable Thomas B. Wells. The tax court found that the appellant had federal income tax deficiencies for the taxable years 1980 and 1981, due to unreported income deriving from the appellant's illegal activities, specifically, appellant's distribution of P-2-P. The court found a deficiency in the amount of $364,237.29 for 1980 and a deficiency in the amount of $209,606.00 for 1981.[3] The Debtor subsequently appealed the tax court's ruling. On appeal

the Third Circuit affirmed the holding of the tax court.

On September 27, 1991, Appellant filed a petition for bankruptcy under Chapter 7. The appellant's debts, excepting those which were later found to be nondischargeable, were discharged on October 31, 1991. Subsequently, the United States filed a brief opposing discharge of Appellant's tax liabilities under 11 U.S.C. § 523(a)(1)(C).

After a hearing on August 2, 1993, the bankruptcy court held that the appellant's tax liabilities were excepted from discharge because the court found that the appellant had made fraudulent returns and willfully attempted to evade his taxes under § 523(a)(1)(C).

Subsequently, the appellant filed an appeal of the bankruptcy order to this court on January 18, 1994. On May 2, 1994, this Court handed down an Order dismissing the appeal without prejudice for failure to comply with Rule 8006 of the Rules of Bankruptcy Procedure. On May 9, 1994, appellant filed a Motion for Reconsideration in this Court. This Court granted the above Motion and reinstated the appeal. This appeal is presently before us.

## II.

The issue on appeal is whether the appellant's tax obligations for the years 1980 and 1981 are dischargeable under 11 U.S.C. § 523(a)(1)(C).[4]

At the outset the appellant argues that the bankruptcy court improperly accorded collateral estoppel effect to the tax court judgment with respect to the issues of fraud and willful evasion under § 523(a)(1)(C). Moreover, the appellant further alleges that the bankruptcy court blindly adopted all the factual findings

---

1. Indeed, in 1981, appellant actually reported income of $9000.00 from illegal drug sales. (*See,* Transcript of Bankruptcy Hearing, pgs. 6–7).

2. Appellant testified that from 1983 to 1987 he lived primarily in Dublin, Ireland with his wife. He also spent time in London and in the Caribbean. (*See,* Trans. p. 10).

3. The Tax Court found that in 1980, a 1160% discrepancy existed between the reported and actual income. Furthermore, in 1981, the Tax Court found a 611% discrepancy between report-

ed and actual income. *See, Berkery v. Commissioner,* 91 T.C. 179, 1988 WL 77545 (1988).

4. The statute provides that:

   A discharge under section 727 ... does not discharge an individual debtor from any debt—
   (1) for a tax or a customs duty—
   (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax. 11 U.S.C § 523(a)(1)(C).

of the tax court as res judicata, and that the United States failed to present any sort of case during the bankruptcy proceeding to meet its burden of proof for dischargeability under § 523(a)(1)(C). We will address these arguments accordingly.

■ In the first instance we note that appellant is correct in his assertion that the finding of an income tax deficiency by the tax court does not have collateral estoppel effect as to the issue of dischargeability for fraud and tax evasion under § 523(a)(1)(C). *See, Graham v. Internal Revenue Service,* 973 F.2d 1089 (3d Cir.1992) (Court held that since issue of fraud was not actually litigated in United States Tax Court proceeding, that the Tax Court judgment holding debtors liable for income tax deficiencies resulting from fraudulent tax returns did not have collateral estoppel effect in determining whether debtors' liability for unpaid income taxes and fraud penalties was nondischargeable under 11 U.S.C. § 523(a)(1)(C)). Stated differently, a finding of liability for an income tax deficiency alone is not akin to a finding of fraud or willful evasion for dischargeability purposes; these are separate issues which needed to be litigated separately.

■ The appellant's contention, however, although correct in principle, is without merit. The appellant misinterprets the bankruptcy court's holding regarding collateral estoppel. The bankruptcy court did not base its holding upon the conclusion that the tax court decision automatically established fraud and willful evasion under § 523(a)(1)(C). Rather, the bankruptcy court held that the appellant was estopped

from attempting to relitigate the issues of whether the debtor had additional, unreported income in 1980 and 1981, the source thereof, *i.e.,* the sale of P–2–P, and whether a tax deficiency existed for 1980 and 1981, since such issues had previously been litigated and determined by the tax court.[5]

■ We find that the bankruptcy court was correct in applying collateral estoppel to the *existence of additional income, the source thereof and the income tax deficiencies,* since all the elements required for collateral estoppel were met with respect to those issues.[6]

■ Next, the appellant contends that the United States failed to offer any sort of evidence to meet its burden of proof under § 523(a)(1)(A) and as a result the bankruptcy court simply adopted all the factual findings of the tax court as its own as res judicata. We disagree with this assertion, again finding it to be without merit.

We note in the first instance that the United States did submit evidence in support of its proposition that appellant committed either fraud or willful evasion as construed under § 523(a)(1)(C). This evidence largely consisted of appellant's own testimony during cross-examination by the United States at the hearing. During cross-examination the appellant testified to having been involved in illegal drug activities (Trans. p. 6–7) which led to his indictment. He also admitted to having been a fugitive from justice for four years (Trans. p. 11–12). Further, he testified to being a college graduate who had speculated in real estate and held overseas

5. The Tax Court found that the appellant had income tax deficiencies in the amount of $364,237.29 for 1980, and in the amount of $209,606.00 for 1981.

6. The Supreme Court in *Grogan* held that collateral estoppel principles apply in nondischargeability proceedings in bankruptcy. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The following elements must be met in order for collateral estoppel to apply:

(1) the issue sought to be precluded must be the same as that involved in the prior action.
(2) that issue must have actually been litigated.
(3) it must have been determined by a valid and final judgment.

(4) determination must have been essential to a prior judgment.
*Matter of Ross,* 602 F.2d 604, 608 (3d Cir.1979) *quoting Haize v. Hanover,* 536 F.2d 576, 579 (3d Cir.1976).
    Clearly, the issue of the existence of income tax deficiencies was actually litigated in tax court and its determination was essential to the tax court's judgment. The tax court found that income tax deficiencies existed in the amount of $364,237.29 for 1980 and the amount of $209,606.00 for 1981. These deficiencies resulted from appellant's failure to report additional income deriving from appellant's sales of an illegal substance, the drug P–2–P. Accordingly, the appellant is precluded from relitigating the existence of these deficiencies in bankruptcy court.

bank accounts. (Trans. p. 8–9). These factual findings largely formed the evidentiary basis upon which the bankruptcy court established its conclusion of fraud and willful evasion.

Furthermore, the United States submitted, as additional evidence to meet its burden of proof, the prior tax court opinion along with a copy of the Third Circuit's holding affirming the tax court decision. As explained previously, the bankruptcy court properly accorded the tax court decision collateral estoppel effect with respect to the existence and basis of the tax deficiencies. The bankruptcy court did not, however, adopt the entire record of the tax court as appellant suggests.

▮ Moreover, the bankruptcy court observed, as evidence of appellant's sophistication and intelligence, that while in prison, the appellant, pro se, successfully challenged his criminal conviction, resulting in a new trial. As counsel for the United States points out, the bankruptcy court properly took judicial notice of the reversal which is reported as *United States v. Berkery*, 889 F.2d 1281 (3d Cir.1989).

As such, the bankruptcy court based its conclusion on its independent evaluation of evidence submitted by the United States, which consisted of appellant's testimony, documentary evidence, and the prior tax court decision. Upon this evidence, the bankruptcy court determined that the United States had met its burden of proving that the appellant's tax obligations were nondischargeable under § 523(a)(1)(C). Accordingly, our focus now shifts to whether this determination was a correct one.

\* \* \* \* \* \*

▮ A debtor under Chapter 7 of the Bankruptcy Code generally is granted a discharge from all debts that arose prior to the filing of the bankruptcy petition. Additionally, a debtor may discharge a federal income tax liability for a tax year for which a return is due more than three years prior to the date of the filing of a Chapter 7 bankruptcy case. *See,* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(A). However, section 523(a)(1)(C), provides that certain tax debts are precluded from discharge in a Chapter 7 case. As

stated previously, the language in § 523 that is relevant to the instant dispute is:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt

(1) ... for a tax or custom duty

(C) with respect to which the debtor made a *fraudulent return or willfully attempted in any manner to evade or defeat such tax* (emphasis added).

*See,* 11 U.S.C. § 523(a)(1)(C).

▮ The bankruptcy court was correct in ruling that the burden of proving that the debtor's tax liabilities are nondischargeable under § 523(a)(1)(C) is on the United States. *In re Fernandez,* 112 B.R. 888 (N.D.Ohio 1990); *In re Kirk,* 98 B.R. 51 (M.D.Fla.1989). The United States must prove nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Graham v. Internal Revenue Service,* 973 F.2d 1089, 1098 (3d Cir.1992). Accordingly, the United States will meet its burden if it demonstrates that it is more probable than not that the appellant made fraudulent returns or willfully attempted to evade his taxes.

▮ Furthermore, since § 523(a)(1)(C) provides two alternative grounds for which a tax liability may be declared nondischargeable, it should be construed in the disjunctive. *See, Hopkins v. United States,* 133 B.R. 102 (Bankr.N.D.Ohio 1991); *In re Carapella,* 105 B.R. 86, 89 (Bankr.M.D.Fla.1989) *aff'd* 115 B.R. 365 (M.D.Fla.1990); *In re Fernandez,* 112 B.R. 888, 891 (Bankr.N.D.Ohio 1990) (legislative history of § 523(a) reflects Congress' intent to preclude the dischargeability of tax obligations on which Debtor made a fraudulent return *or* willfully attempted to evade or defeat a tax liability). The standards for proving "fraud" and "willful attempt" under § 523(a)(1)(C) are not the same. *See, Irvine v. Internal Revenue Service,* 163 B.R. 983 (Bankr.E.D.Pa.1994); *Lilley v. Internal Revenue Service,* 152 B.R. 715, 720–21 (Bankr. E.D.Pa.1993). Thus, if the United States meets its burden of proving the elements of

just one of these two prongs, dischargeability will not be granted.

■ In construing the fraud prong under § 523(a)(1)(C), Courts have analogized it to the civil fraud penalty under the Internal Revenue Code, 26 U.S.C. § 6663. *McKay v. United States,* 957 F.2d 689 (9th Cir.1992) (Court held that the facts and circumstances required to prove fraud under § 523(a)(1)(C) are the same as those required to prove a civil fraud penalty under I.R.C. § 6653(b)).[7] Civil fraud may be demonstrated under the IRC without a showing of "evil motive or sinister purpose". *Irvine,* 163 B.R. at 986 *quoting Granado v. Commissioner of Internal Revenue,* 792 F.2d 91, 93 (7th Cir.1986).

■ Moreover, the existence of fraud is a factual question which is determined from the entire record. *In re Kirk,* 98 B.R. 51, 55 (Bankr.M.D.Fla.1989) (Court held that fraud is determined by evaluating the whole course of the debtor's behavior and may rest upon reasonable inferences properly drawn from such conduct); *Stratton v. C.I.R.,* 54 T.C. 255, 282, 1970 WL 2376 (1970). Since direct proof is fraud is rarely available, fraud is often demonstrated by circumstantial evidence. *Kirk,* 98 B.R. at 55. As such, courts have identified certain activities as "badges of fraud", which serve as circumstantial evidence. *In re Graham,* 108 B.R. 498, 503–04 (Bankr.E.D.Pa.1989), *aff'd* 131 B.R. 275 (E.D.Pa.1991), *rev'd & remanded,* 973 F.2d 1089 (3d Cir.1992).[8] The badges of fraud include large understatements of income made consistently over time; failure to keep adequate records; failure to file tax returns; implausible or inconsistent behavior by the taxpayer; concealing assets; and failure to cooperate with taxing authorities. *Graham,* 108 B.R. at 503–504; *Bradford v. C.I.R.,* 796 F.2d 303 (9th Cir.1986); *See also Estate of Mazzoni v. Commissioner of Internal Revenue,* 451 F.2d 197, 202 (3d Cir. 1971). Other factors which may indicate the existence of fraud include the illegality of the activity generating the additional unreported income as well as the relative sophistication of the debtor. *See, Williams v. Commissioner,* 63 T.C.M. (CCH) 2396, 1992 WL 48366 (1992). Many United States Tax Court cases involving substantial understatements of income from illegal activities, such as drugs, have upheld the fraud penalty. *See, Francis v. Commissioner,* 64 T.C.M. (CCH) 495, 497, 1992 WL 195971 (1992) (Court determined the existence of fraud where: (1) taxpayers had underreported their income on their tax return by $30,000 for 1977, $60,000 for 1979, and $85,000 for 1980; (2) the additional unreported income stemmed from drug smuggling; and (3) the taxpayers failed to cooperate with IRS officials); *Markham v. Commissioner,* 62 T.C.M. (CCH) 645, 1991 WL 167143 (1991) (Tax Court sustained the fraud penalty, finding that the taxpayer had engaged in illegal drug activities, failed to file a return, concealed large amounts of cash, and failed to make estimated tax payments); *Yocum v. Commissioner,* 50 T.C.M. (CCH) 906, 1985 WL 15273 (1985) (Tax Court upheld the fraud penalty where the taxpayer: (1) failed to report over $61,000 in income for 1974 and over $55,000 in income for 1975 from the transportation of marijuana from Mexico to the United States; (2) understood that this type of income had to be reported; and (3) engaged in substantial cash transactions during 1974 and 1975). *Bradford v. Commissioner,* 796 F.2d 303 (9th Cir.1986) (The Court of Appeals for the Ninth Circuit held that the following facts supported a finding of fraud: (1) Taxpayer engaged in illegal activities; (2) he failed to file for four consecutive years; (3) he failed to report substantial business income, all of which he knew constituted taxable income; and (4) he dealt in cash to avoid scrutiny of his finances; (5) he filed false W-4's; (6) he made

---

7. Courts discussing the civil fraud penalty under the IRC often refer to IRC § 6653(b). Section 6653 was amended in 1989 to substitute provisions relating to failure to pay stamp tax for the provisions relating to additions to tax for negligence and fraud. The provisions appertaining to the imposition of a penalty for fraud were moved to IRC § 6663.

8. The bankruptcy court's decision in *Graham* was vacated and remanded by the Third Circuit Court of Appeals with instructions to apply the preponderance of the evidence burden of proof standard. The Third Circuit did not criticize the bankruptcy court's discussion of "badges of fraud" and therefore it is helpful to our analysis.

efforts to conceal his "laetrile" distribution activities; (7) he failed to make estimated tax payments; (8) he failed to cooperate with the IRS authorities; and (9) he failed to maintain adequate records).

▉ Having set forth the applicable law regarding the existence of fraud under § 523(a)(1)(C), we will now consider the bankruptcy court's finding of fraud in the case before us. First, the court cited as chief evidence of fraud the fact that in 1981, the appellant actually reported income of $9000.00 from illegal drug sales. From this the bankruptcy court concluded that the appellant intentionally failed to report the additional illegal income. We agree with this contention. The appellant, in actually reporting $9000 in illegal income, clearly demonstrates he was aware of the requirement to report income generated from illegal sources. As such, it follows that in understating the actual amount of additional illegal income, the appellant intentionally attempted to defraud the United States by filing a fraudulent return.

Moreover, as additional evidence of fraud, the bankruptcy court observed that immense discrepancies existed between the amount of reported income and the actual amount of income. In 1980 appellant understated his income by *1160%* and in 1981 he understated it by *611%*. As mentioned before, the presence of such large discrepancies in income are circumstantial evidence of fraud, e.g, a "badge of fraud". *Estate of Beck v. Commissioner,* 56 T.C. 297, 364, 1971 WL 2514 (1971) (Court held that where petitioner had consistently and substantially understated his income, that alone was persuasive evidence of fraudulent intent to evade taxes); *See Estate of Beck v. Commissioner,* 56 T.C. 297, 364, 1971 WL 2514 (1971); *Patton v. Commissioner,* 799 F.2d 166, 171 (5th Cir.1986); *Merritt v. Commissioner,* 301 F.2d 484, 487 (5th Cir.1962).

As further indicia of fraud, the bankruptcy court cited the fact that the additional unreported income was generated from an illegal activity. As mentioned previously, the tax court routinely upholds fraud penalties in cases involving substantial understatements of income from illegal business activities, such as drug dealing. *See, Francis,* 64 T.C.M. (CCH) 495; *Markham,* 62 T.C.M. (CCH) 645; *Yocum,* 50 T.C.M. (CCH) 906. Additionally, the appellant's subsequent flight following his indictment, as the bankruptcy court points out, demonstrates an unwillingness to cooperate with the authorities. *See generally, Bradford v. C.I.R.,* 796 F.2d 303 (9th Cir.1986) (Ninth Circuit held that failure to cooperate with authorities is indicative of fraud).

Furthermore, the appellant testified at the bankruptcy hearing that he had bank accounts in Ireland and in London, England [9]. As noted previously, the concealment of assets may serve as circumstantial evidence of the existence of fraud. *Graham,* 108 B.R. at 503–04; *Bradford,* 796 F.2d at 307.

Finally, the bankruptcy court observed the appellant's sophistication and obvious intelligence.[10] Such sophistication and intelligence, the bankruptcy court submits, is indicative of appellant's clear intent to file a fraudulent return and consequently, evade a tax due. *See, e.g., Halle v. Commissioner,* 175 F.2d 500, 502 (2d Cir.1949). We agree with the bankruptcy court's contention and note that the appellant conceded his own awareness of the requirement that illegal income must be reported to the IRS at the bankruptcy hearing. (*See,* Trans. pg. 9–10).

After careful consideration, in light of all the aforementioned factors, it is the opinion of this Court that the bankruptcy court was correct in holding that the United States met its burden of proving that appellant filed fraudulent returns for 1980 and 1981.[11]

**9.** The appellant testified, however, that his bank account in London contained a thousand pounds or less. (Trans. p. 14).

**10.** The bankruptcy court took note that the appellant had a college degree and had been active in real estate speculations as well as ran several businesses (Trans. pg. 9). The bankruptcy court

also observed the appellant's successful challenge, pro se, of his criminal conviction.

**11.** We note that the bankruptcy court did not analyze each prong of § 523(a)(1)(C) separately, but rather seemed to assess the prongs collectively in concluding that the appellant's tax debts were nondischargeable under *both prongs* of

For purposes of our analysis, it is necessary only to consider whether the United States has met its burden of proof on one of the two prongs and it is clear that it did so with regard to the first prong (making a fraudulent return). Nevertheless, although not strictly necessary to our ruling, we will consider whether the evidence likewise supports a finding that the debtor willfully attempted to evade or defeat additional income tax.

 With respect to the willful evasion prong of § 523(a)(1)(C), there is a split of opinion among courts as to whether it should be interpreted by applying the restrictive criminal standard, which requires that a taxpayer commit an affirmative act calculated to defraud the government, or by applying the standard used in civil cases, which requires only a voluntary, conscious, and intentional attempt to evade taxes in any manner, *e.g.,* failure to file a tax return. A majority of courts, however, have chosen to follow the less restrictive standard utilized in civil cases. *Toti v. United States,* 24 F.3d 806 (6th Cir.1994); *In re Bruner,* 1994 WL 461310 * 2 (W.D.La.1994); *In re Sumpter,* 170 B.R. 908, 913 (E.D.Mich.1994); *In re Haas,* 173 B.R. 756 (S.D.Ala.1993); *In re Fridrich,* 156 B.R. 41 (D.Neb.1993); *In re Peterson,* 152 B.R. 329 (D.Wyo.1993); *In re Berzon,* 145 B.R. 247 (Bankr.N.D.Ill.1992); *In re Ketchum,* 177 B.R. 628 (E.D.Mo.1995); *In re Irvine,* 163 B.R. 983 (Bankr.E.D.Pa. 1994) (Court analogized the willingness requirement under § 523(a)(1)(C) to IRC § 6672, which imposes a penalty for an individual within a corporation responsible for paying withholding taxes who willfully fail to pay such taxes; willfulness under § 6672 as interpreted by the Third Circuit in *United States v. Vespe,* 868 F.2d 1328 (3d Cir.1989) means voluntary, conscious, or with reckless disregard . . .).

 In this case, employing the majority view's interpretation of the willingness

prong under the civil standard, (a voluntary, conscious and intentional attempt to avoid taxes), we find it evident from the submitted evidence that appellant's failure to correctly report the actual amount of additional income, was indeed voluntary, conscious, and intentional, and thereby, a willful attempt to evade a tax due under § 523(a)(1)(C). Accordingly, we find under the willfulness prong, as well as under the fraud prong, that the appellant's tax obligations should not be discharged. As the court in *Toti* stated, "[t]he purpose of the Bankruptcy Code is to allow honest, but unfortunate debtors a fresh start. Its purpose is not to create a device for tax evasion". *Toti,* 24 F.3d at 809 (*quoting United States v. Toti,* 149 B.R. 829, 834 (E.D.Mich.1993)).

Consequently, this Court will enter an order affirming the bankruptcy court.

---

§ 523(a)(1)(C). However, the analysis of the factors which formed the basis for the court's decision appears to focus entirely on the first prong (making a fraudulent return). Indeed, it appears that the bankruptcy court in finding the existence of fraud under the first prong, consequently derived from this a finding of willful evasion under the second prong. In other words, in finding that the appellant had made a fraudulent return under the first prong, it appears that the bankruptcy court concluded that it would automatically follow that appellant willfully attempted to evade or defeat taxes under the second prong.